Louis David QUERY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellees
(Plaintiff Below).

No. 49S02–0008–CR–00502.

Supreme Court of Indiana.

April 11, 2001.

Terry R. Curry, Indianapolis, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Andrew Hedges, Thomas D. Perkins, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

### ON PETITION FOR TRANSFER

BOEHM, Justice.

■ This case deals with the circumstances under which the State must obtain a new search warrant if information undermining the probable cause in that warrant is discovered by the police after the warrant has been granted but before it has been executed. We hold that where the State learns that a material fact establishing the probable cause underlying a search warrant is incorrect, the State is obliged to inform the issuing magistrate of the new facts and, if it fails to do so, the warrant is per se invalid. Information is material if it might affect either the issuance of the warrant, or the scope of the warrant. We find this case presents an extremely unusual example of an immaterial change. Although the new information undermined the crime suggested by the information supplied to the magistrate, it also provided probable cause for a second crime, and, if a second search warrant had been issued, the police would have been authorized to search the same location for virtually identical items.

### Factual and Procedural Background

Greenwood police officer Matthew Fillenwarth worked with a confidential informant on October 31, 1998, to arrange a purchase of methamphetamine from Louis David Query. The informant was supervised by Fillenwarth as he purchased a white powdery substance from Query. Fillenwarth conducted two field tests to determine the nature of the substance. The first test was negative for controlled substances and the second indicated that the substance contained methamphetamine.

Based on Fillenwarth's affidavit of probable cause, a magistrate issued a search warrant for Query's apartment on November 2, 1998. On November 3, Fillenwarth learned that a laboratory test had determined that the substance purchased from Query did not contain any controlled sub-

stance. That day, Fillenwarth consulted with a Johnson County deputy prosecutor and was assured that the warrant was still good. On November 4, the warrant was executed and eighty-one grams of uncut cocaine were found in Query's apartment. No methamphetamine was found.

Query was charged with dealing in cocaine and possession of cocaine. Query moved for suppression of the cocaine. The trial court denied the motion, reasoning that, although the issuing magistrate should have been informed that some of the information contained within the probable cause affidavit was incorrect, the fact that the officer failed to do so did not automatically invalidate the warrant. Instead, the trial court stated that it must look to the effect that the inclusion of the lab report would have had on the existence of probable cause. The trial court held that the information in the lab report would have provided probable cause that Query was engaged in dealing in a look-alike substance, a Class D felony, and therefore "[i]t would be reasonable to believe that there would be evidence of that crime located in the apartment, such as, powder similar to the powder represented to be methamphetamine, similar packaging materials, the supplied currency."

On appeal, the Court of Appeals noted that it is the issuing magistrate's role to determine whether or how new information affects the finding of probable cause and the validity of a warrant. Because the magistrate here did not have access to "full information," the court held that the search warrant lacked a sufficient showing of probable cause that Query was engaged in dealing in a look-alike substance. *Query v. State,* 725 N.E.2d 129, 132 (Ind. Ct.App.2000). The court also held that the "good faith exception" did not apply to these circumstances. *Id.*

## Standard of Review

In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id,* at 238–39, 103 S.Ct. 2317. It is clear that a substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Houser v. State,* 678 N.E.2d 95, 99 (Ind.1997). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* at 98. In this review, we consider only the evidence presented to the issuing magistrate and not post hoc justifications for the search. *Seltzer v. State,* 489 N.E.2d 939, 941 (Ind. 1986).

## The Search Warrant

The Fourth Amendment to the United States Constitution reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The text of Article I, Section 11 of the Indiana Constitution contains nearly iden-

tical language. These principles are codified in Indiana Code section 35–33–5–2, which details the information to be contained in an affidavit for a search warrant. Specifically, the statute provides that the affidavit must describe with particularity the "house or place to be searched and the things to be searched for ... alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that ... the things as are to be searched for are there concealed...." Ind.Code § 35–33–5–2 (1998).

■ Query argues that the cocaine discovered in the November 4 search must be suppressed because the police were required to disclose that the substance purchased by the confidential informant was not methamphetamine. Query contends that where the information establishing probable cause is found to be incorrect after the search warrant is issued but before it is executed, and the magistrate is not informed, the search warrant is per se invalid.

We find no case in this state or in the federal courts directly on point. The Second Circuit has held that where the police discover that a fact underlying a magistrate's determination of probable cause for issuing a search warrant is materially different than originally thought, it is the magistrate, not the executing officers, who must determine whether probable cause still exists. Under this view, with which we agree, the magistrate must be made aware of any "material" new or correcting information. *United States v. Marin–Buitrago,* 734 F.2d 889, 894 (2d Cir.1984). The typical formulation of "material" facts is that they cast doubt on the existence of probable cause. *Id.* at 895 (citing *United States v. Dennis,* 625 F.2d 782, 791 (8th Cir.1980)). The new information and the information in the affidavit are to be considered as a whole. *Id.* (citing *United States v. Kunkler,* 679 F.2d 187, 190–91 (9th Cir.1982)); *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980).

In *Marin–Buitrago,* the new information altered neither the crime alleged nor the scope or nature of the resulting search. In this case, the correcting information obliterated probable cause for a search for evidence or fruits of a methamphetamine sale, but simultaneously created probable cause for a search for evidence or fruits of a sale of a look-alike drug, a Class D felony. This is not a trivial change. We think, however, it is not a "material" one because the old information justified a warrant for the same location and virtually the same items. In the end, the officers did exactly what they would have done anyway to execute a warrant based on the new information. Under the original search warrant, the police were empowered to search for "[m]ethamphetamine, paraphernalia used to deal or ingest methamphetamine, any documents, notes, records, scales, money or any indicia of use of or dealing in methamphetamine." Methamphetamine, a white powder, is identifiable only through chemical analysis. To the naked eye, a white powder that actually is methamphetamine and a white powder that is not are identical. Because the nature and scope of a search for methamphetamine is identical to the nature and scope of a search for a look-alike, the correcting information in this case does not constitute a "material" change.

It is important to note, however, that both the validity and scope of the search must be unaffected to render the information immaterial. This case presents very unusual facts. We do not intend to encourage police or prosecutors to withhold new or correcting information from magistrates. Indeed, it is difficult to think of another circumstance in which new information would destroy probable cause for

one crime and, at the same time, create probable cause for another crime where the parameters of the resulting search in either case would be identical. Police who do not keep the issuing magistrate fully informed of any new or correcting information run the risk that the information will be found to have been material. That will be the result if either the validity or the scope of the warrant was affected. If so, the original search warrant will be held invalid and the fruits of that search suppressed.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

RUCKER, J., dissents with separate opinion in which SULLIVAN, J., concurs.

RUCKER, Justice, dissenting.

I respectfully dissent. In effectuating the Fourth Amendment's command that "no Warrants shall issue, but upon probable cause," the United States Supreme Court has long required that a neutral and detached magistrate—not a police officer—make the determination of probable cause. *Shadwick v. City of Tampa,* 407 U.S. 345, 350, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972). The *Shadwick* court defined "neutral and detached" as "severance and disengagement from activities of law enforcement." *Id.* Justice Jackson explained the importance of this separation in *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948):

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforce-

ment the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.... When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

*Id.* at 13–14, 68 S.Ct. 367 (footnote omitted). *See also Wong Sun v. United States,* 371 U.S. 471, 481–82, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (holding that the United States Constitution requires "that the deliberate, impartial judgment of a judicial officer ... be interposed between the citizen and the police....").

Similarly, this Court has held that Article 1, Section 11 of the Indiana Constitution[1] requires that a neutral and detached magistrate make the determination of probable cause. *State ex rel. French v. Hendricks Superior Court, Hendricks County,* 252 Ind. 213, 223, 247 N.E.2d 519, 525 (1969) (declaring "it is a long standing rule in Indiana that the determination of probable cause is a judicial determination to be made by a judge or magistrate, and not a ministerial determination."). In a case involving the warrantless search of an automobile, Justice DeBruler eloquently

---

1. Nearly verbatim to the Fourth Amendment of the United States Constitution, Article 1, Section 11 of the Indiana Constitution provides in relevant part: "no warrant shall is-

sue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

underscored the rationale for the requirement that judicial officers, as opposed to police officers, determine the existence of probable cause:

> State judges and magistrates with authority to issue warrants have received full legal educations. They often have had considerable experience in the practice of law; they are subject to the Code of Judicial Conduct. Moreover, judges and magistrates are generally politically answerable to their communities in ways that law enforcement officers are not and judicial officers are, therefore, more likely to understand the general mores regarding reasonable behavior. This preference for warrants is based on the belief that a neutral and detached magistrate is more likely to be a fair evaluator of the relevant circumstances than the police officer actively involved in investigating a particular crime.

*Brown v. State,* 653 N.E.2d 77, 80 (Ind. 1995) (footnote omitted).

In this case a magistrate issued a warrant for the search of methamphetamines based upon an officer's sworn representation that a field test revealed the presence of the illegal drug. However, before the warrant was executed the officer learned that a laboratory test showed the presence of no controlled substance at all. Consistent with standard operating procedure in that jurisdiction, the officer contacted the local prosecutor with this new information. Rather than alert the magistrate, the prosecutor gave the officer the go-ahead to execute the warrant. Carving out an exception to the requirement that a neutral and detached magistrate make the determination of probable cause, this Court's majority endorsed the actions of the police and prosecutor on the ground that the new information was not "material." Op. at 772.

In my view this materiality exception is problematic because it runs afoul of both the United States and Indiana constitutional guarantees that a neutral and detached magistrate determine the existence of probable cause. Instead, it leaves into the very hands of those who are "actively involved in investigating [the] crime" the determination of whether the new information is material and thus whether probable cause exists. Stated differently, when a new fact is discovered, a police officer—or in this case a prosecuting attorney—is the one who will determine whether it is material to the magistrate's probable cause determination. This means that only when a police officer finds that a newly discovered fact is material to the magistrate's probable cause determination will that fact even get relayed to the issuing magistrate before execution of the search warrant. In my view this is incorrect. This is a magistrate's call and neither the investigating officer nor this Court should engage in speculation on whether the magistrate would have found that probable cause still exists had the magistrate been presented with this new information.

Rather than carve out an exception, I would hold that an officer has a duty to report to the magistrate any new or correcting information that defeats the original underlying basis for the magistrate's issuance of a search warrant. Because that was not done in this case, I would reverse the trial court's denial of Query's motion to suppress.

SULLIVAN, J., concurs.