**Lewis ALLEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0212–CR–605.**

Court of Appeals of Indiana.

Nov. 13, 2003.

Michael E. Caudill, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Lewis Allen (Allen), appeals his convictions for Count I, possession of cocaine and a firearm, a Class C felony, Ind.Code § 35–48–4–6; and Count II, possession of cocaine, a Class D felony, I.C. § 35–48–4–6.

We affirm.

### ISSUES

Allen raises three issues on appeal, which we restate as follows:

(1) Whether the trial court erred in denying Allen's pre-trial Motion to Suppress;

(2) Whether there was sufficient evidence to convict Allen of Count II, possession of cocaine, a Class D felony; and

(3) Whether I.C. § 35–48–4–6 is unconstitutionally overbroad as applied to elevate the punishment for possession of cocaine with a firearm where the possession of the firearm is in the Appellant's own home.

## FACTS AND PROCEDURAL HISTORY

On May 25, 2001, Indianapolis Police Department Officers (the "officers") executed a search warrant at 1226 Racquet Club South Drive, Apartment B (the "apartment"), in Indianapolis, Indiana. Marion County Superior Court Judge Mark Stoner issued the search warrant pursuant to a probable cause affidavit submitted by Indianapolis Police Department Detective Jeffrey L. Wager (Detective Wager). The officers obtained the warrant, which authorized them to search for weapons, on the same day and in the context of an investigation into a series of murders.

That day, Detective Wager and members of the Indianapolis Police Department SWAT Team canine units (SWAT Team) served the warrant at the apartment at approximately 8:00 p.m. After knocking twice and announcing their presence, the SWAT Team made a forced entry through the apartment's front door. Upon entering the apartment, Indianapolis Police Officer Ted Fries (Officer Fries) saw Allen standing in the living room, pointing a loaded .40 caliber handgun at the officers. The officers also noticed the presence of two other men, Booker Cross (Cross) and Christopher Edmond (Edmond) in the apartment. Detective Wager smelled and saw marijuana on a table in the living room of the apartment.

During the subsequent search, Detective Wager and Indianapolis Police Department Officer Todd Lappin (Officer Lappin) each searched a different bedroom. Officer Wager found paperwork belonging to Cross in the bedroom he searched. While searching the other bedroom, Officer Lappin noticed that the bathroom was attached to the bedroom. Officer Lappin decided to search the bathroom first. Inside the bathroom, Officer Lappin saw a cigar box and opened it to see if the cigar box contained a gun. However, Officer Lappin found a rock of cocaine and a receipt for the purchase of a handgun in Allen's name. In the attached bedroom, Officer Lappin found two documents bearing Allen's name and the 1226 Racquet Club South Apartment B address. The officers also discovered that Allen's name was on the lease for the apartment.

On May 29, 2001, the State filed an information against Allen charging him with Count I, possession of cocaine and a firearm, a Class C felony, I.C. § 35-48-4-6; Count II, possession of cocaine, a Class D felony, I.C. § 35-48-4-6; and Count III, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11. On July 17, 2001, Allen filed a Motion to Suppress, alleging that the evidence was unlawfully seized pursuant to an invalid search warrant. Specifically, Allen alleged that: 1) the affidavit relied upon hearsay information with no basis for establishing the credibility or reliability of the information; 2) the information relied upon was stale; 3) the warrant was overbroad and provided the officers with unfettered discretion to search; and 4) the officers exceeded the scope of the warrant by looking in the cigar box in the bathroom.

On August 3, 2001, a hearing on Allen's Motion to Suppress was held. At the hearing, Allen entered the search warrant into evidence and the trial court took the matter under advisement. On August 8, 2001, the trial court denied Allen's Motion to Suppress. On August 20, 2001, Allen filed his Motion to Certify denial of his Motion to Suppress for Interlocutory Appeal. On December 11, 2001, this court denied Allen's Petition for Interlocutory Appeal.

On August 19, 2002, Allen waived his right to a jury trial. On September 30, 2002, a bench trial was held. At the conclusion of the trial, the trial court found Allen guilty of Counts I and II and acquit-

ted him of Count III. On November 26, 2002, a sentencing hearing was held. At the hearing, the trial court merged Count II into Count I and sentenced Allen to four years with two years suspended on Count I, possession of cocaine and a firearm. Additionally, the trial court ordered Allen to serve his sentence at Riverside Residential Center.

Allen now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Allen's Pre–Trial Motion to Suppress

Allen argues that the trial court erred by denying his Motion to Suppress. Specifically, Allen asserts that the police did not rely upon a valid search warrant when executing the search. Allen alleges that the warrant was defective because it was based upon anonymous, unverified information from untrustworthy sources. Allen also argues that because the search warrant was based on stale information, there was a lack of a nexus between the crime alleged and the place to be searched and the objects to be seized. Consequently, Allen maintains that the items seized as a result of the search were fruits of an invalid search and should have been excluded from consideration at his trial.

Conversely, the State argues that the trial court properly denied Allen's Motion to Suppress. Specifically, the State contends that the police relied upon a valid search warrant when executing the search. As a result, the State maintains that the evidence seized as a result of the search was properly considered as evidence at trial.

### A. Standard of Review

In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Query v. State,* 745 N.E.2d 769, 770 (Ind.2001) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* It is clear that a substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Houser v. State,* 678 N.E.2d 95, 99 (Ind.1997). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* at 98. In this review, we consider only the evidence presented to the issuing magistrate and not post hoc justifications for the search. *Query,* 745 N.E.2d at 771.

### B. The Search Warrant

First, Allen argues that the warrant used by the police officers was supported by uncorroborated hearsay. Specifically, Allen alleges that the warrant was defective because it was based upon anonymous, unverified information from untrustworthy sources. Conversely, the State asserts that the search warrant provided sufficient evidence to establish probable cause and did not rely upon uncorroborated hearsay testimony.

As mentioned above, reviewing courts, which include both the trial court ruling on a motion to suppress evidence and the appellate court reviewing that decision, are to focus on whether a "substantial basis" existed for a warrant authorizing a search or seizure, and doubtful cases

are to be resolved in favor of upholding the warrant. *Iddings v. State*, 772 N.E.2d 1006, 1012 (Ind.Ct.App.2002). We review the trial court's "substantial basis" determination de novo, but give significant deference to the probable cause determination of the magistrate who initially issued the search warrant, focusing on whether reasonable inferences drawn from the totality of the evidence support the determination. *Id.* A presumption of validity of the search warrant exists, and the burden is upon the defendant to overturn that presumption. *Id.*

In the instant case, Allen attacks the content of the affidavit, contending that the affidavit fails to comply with the mandates of I.C. § 35–33–5–2, requiring that affidavits based upon hearsay establish the credibility of each of the declarants. Our review of the record shows that information in the affidavit came from interviews with witnesses to the various murders and from interviews with the suspects, as well as information discovered by the officers themselves in the course of their investigation.

In dealing with witnesses who have personally witnessed the murders, our supreme court has previously held that eyewitnesses and crime victims are considered presumptively reliable unless circumstances exist which call into question their credibility. *See Pawloski v. State*, 269 Ind. 350, 380 N.E.2d 1230, 1232 (1978). Thus, the information that witnesses identified Kendrick Morris (Morris), Steven Kendall (Kendall), Wesley Young (Young), and Jamal Kirklen (Kirklen) (collectively the "suspects") as the shooters in the string of murders is presumptively reliable. Further, the record shows that information given to the police from the witnesses was sufficiently corroborated. *See id* at 1233 (the court stated that the requirement for corroboration is not total-ly eliminated). For instance, the record reveals that one victim used the term, "the Gary Boys" to refer to the suspects. The officers, in turn, verified that the murder suspect Kirklen, is from Gary. A further review of the record reflects that the police discovered that Kirklen had two cousins from Gary who were living in the apartment that the officers requested to search. Moreover, the record is devoid of evidence that circumstances existed to call into question the witnesses' credibility. *See id.* Therefore, we find that the witnesses' information was sufficiently reliable.

Furthermore, our supreme court has squarely held that "[d]eclarations against penal interest can furnish sufficient basis for establishing the credibility of an information within the meaning of Indiana Code Section 35–33–5–2(b)(1)." *Houser*, 678 N.E.2d at 100. In *Houser*, the affidavit established the credibility of the source in part because the source's statements suggested a conspiracy between the source and the other suspects in the murders. *See id.* This court likewise concluded in *Nash v. State*, 433 N.E.2d 807, 809–10 (Ind.Ct.App.1982), that hearsay from an anonymous informant was sufficiently reliable where it indicated that the informant admitted committing a burglary and delivering stolen items to the defendant's residence. We concluded there was substantial authority to support a determination that statements against penal interest are reliable indicia of credibility to sufficiently support a finding of probable cause:

[c]ommon sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of

credibility sufficient at least to support a finding of probable cause to search. *Iddings,* 772 N.E.2d at 1014 (quoting *United States v. Harris,* 403 U.S. 573, 584, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)).

Pursuant to this authority, we conclude that the hearsay statements of several of the suspects used in the affidavit were declarations against their penal interests. In particular, the record reveals that some of the information in the affidavit was learned from Morris, Kendall, Young, and Kirklen. The record shows that these four men were feuding with the victims of the murders and that the victims previously robbed and shot at this group of men. The record further reflects that these four men were friends and hung out together. Just as in *Houser* and *Nash,* the suspects implicated themselves in the commission of the crimes, thus providing a recognized basis for concluding that the informant was a credible source and the information they provided was reliable.

Therefore, giving significant deference to the judge who issued the search warrant, we conclude there was a substantial basis upon which to conclude there was probable cause to believe the weapons were at the apartment. *See Iddings,* 772 N.E.2d at 1012. Consequently, we find that the trial court did not err in denying Allen's Motion to Suppress.

### C. *Stale Information*

Next, Allen claims that the warrant was based on stale information. It is a fundamental principle of search and seizure law that the information given to the magistrate or judge in the application for a search warrant must be timely. *Breitweiser v. State,* 704 N.E.2d 496, 499 (Ind. Ct.App.1999); *see Raymer v. State,* 482 N.E.2d 253, 255 (Ind.1985) ("[s]tale information only gives rise to a mere suspicion and not a reasonable belief, especially when the items to be obtained in a search are easily concealed and moved"). Accordingly, probable cause must be found to exist at the time the warrant issues, and the facts in support of the warrant must be so close to the time of the issue of the warrant as to justify a finding of probable cause at that time. *See id.*

While it is true that the age of information supporting the application for a warrant can be a critical factor when determining whether there is probable cause, our courts have not established a precise rule as to how much time may elapse between obtaining the facts upon which the search warrant is based and the issuance of the warrant. *Id.* Therefore, probable cause is not determined by merely counting the number of days between the occurrence of the facts relied upon and the warrant's issue. *Id.* Instead, the staleness of the information must be judged by the facts and circumstances of each case. *Id.*

In the present case, the officers were searching for the weapons used in a series of shootings that occurred between April 8 and May 17, 2001. The record reflects that the officers obtained and executed the warrant on May 25, 2001. The record further shows that the information connecting the suspects of the shootings to the apartment was discovered during police interviews with those suspects on May 17, 2001. Our review of the record reveals that one suspect told the officers that the other three suspects kept their guns at a safe location rather than carrying them around for fear of being stopped by the officers.

Moreover, although the shootings occurred two months prior to the execution of the search warrant, we have previously held that handguns and rifles are the type of property that a person reasonably could

be expected to keep for at least a period of a month and a half. *See Foster v. State,* 633 N.E.2d 337, 345 (Ind.Ct.App.1994) (finding that a "handgun" was the "sort of property that the perpetrator reasonably could be expected to keep" and thus that there was probable cause to believe that the gun could be found twenty-nine days after the murder). Nevertheless, the record reveals that the officers believed that the weapons were used in multiple shootings, with the most recent shooting taken place a week before the warrant was sought. Therefore, in keeping with our deference to a magistrate's or trial court's determination of probable cause, we conclude that the initial probable cause supporting the issuance of the search warrant continued to exist at the time of the search, despite the delay in its execution. *See Breitweiser,* 704 N.E.2d at 501. Accordingly, we reject Allen's contention that the warrant was based upon stale information.

### D. *Nexus Between the Crime Alleged and the Place Searched*

Allen further argues that the affidavit failed to establish a sufficient nexus between the items sought and the location to be searched. Conversely, the State argues that Allen waived this issue for our review because it is raised for the first time on appeal. However, we reject the State's contention. In particular, our review of the record shows that Allen raised this issue sufficiently in his motion to suppress in paragraphs 4, 5, and 7, and again during trial. Therefore, we will review the merits of Allen's claim.

Indiana Code Section 35–33–5–2 governs affidavits used to obtain search warrants and provides, in pertinent part:

(a) Except as provided in section 8 of this chapter, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

*See Hensley v. State,* 778 N.E.2d 484, 487–88 (Ind.Ct.App.2002). Allen now contends that the affidavit fails to provide probable cause as required under I.C. § 35–33–5–2. In particular, Allen maintains that there is nothing in the affidavit to link the crime alleged to the apartment that was searched. We disagree.

In the instant case, the record reveals that the officers were looking for weapons that were used in a series of murders. Although Allen was not a named suspect, his cousin, Kirklen, was a named suspect in the murders. Nevertheless, our review of the record reveals that the affidavit clearly establishes the nexus between the crimes committed with the weapons that were sought and the apartment that was searched.

As previously shown, the affidavit set forth the fact that the occupant of the apartment, Allen, was related to one of the suspects in the murders. The affidavit further sets forth the fact that Kirklen, Kendall, Morris, and Young, the suspects,

all admitted to spending time at the apartment. Although Allen claims that there is no information concerning the specific time that the suspects were at the apartment, our review of the record reveals that the suspects began spending time at the apartment after the series of murders. The record also shows that Young admitted to seeing a handgun in the apartment in the past. Furthermore, the record contains information that the police received information from one suspect that the other suspects kept their guns "at a safe location." (Appellant's App. p. 42).

Based upon this information, we can say that it was reasonable for Detective Wager to believe that the weapons would be found at the apartment belonging to one of the suspects' cousins and where at least one suspect spent a significant amount of time. Therefore, we find that a reasonably prudent person could make a practical, common-sense determination, given all the circumstances set forth in the affidavit, that there was a fair probability that the weapons used in the series of murders would be found at the apartment. *See Hensley,* 778 N.E.2d at 487. Accordingly, we reject Allen's argument that the affidavit lacked a sufficient nexus between the items to be searched and the place to be searched.

### E. *Scope of the Search Warrant*

Allen further asserts that the search was improper because it was executed pursuant to a general warrant which granted unbridled discretion to the police regarding the items sought in violation of the search and seizure clauses of the United States and Indiana Constitutions. Specifically, Allen argues that the officers exceeded the scope of their authority under the warrant by searching inside of the cigar box for weapons.

█ The Fourth Amendment to the United States Constitution requires search warrants to "particularly describe[d] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV; *Warren v. State,* 760 N.E.2d 608, 610 (Ind.2002). The United States Supreme Court has stated:

General warrants, of course, are prohibited by the Fourth Amendment. "[T]he problem [posed by the general warrant] is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings ... [The Fourth Amendment addresses the problem] by requiring a 'particular description' of the things to be seized." This requirement " 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' "

*Id.* (citing *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627, 642 (1976)). A warrant that leaves the executing officer with discretion is invalid. *Id.*

█ In this case, the warrant listed the items to be seized as follows: "[firearms] of the following description: .45 caliber pistols, 9mm pistols, 7.62 × 39 rifles, .22 caliber pistols, and other .45 caliber pistols and any indic [sic] of crime." (State's Ex. 1) Thus, the warrant authorized the officers to search for those types of weapons. Allen now claims that Officer Lappin exceeded this scope, by looking inside the cigar box found in Allen's bathroom. Allen contends that the officers knew that the guns listed in the warrant could not be found inside the cigar box.

However, we find that Allen's argument is without merit. It is our belief that a pistol is an object that reasonably might fit inside a cigar box. In fact, Officer Lappin testified at trial that he reasonably believed the cigar box could have contained a

.9mm or a similar firearm with a "light weight weapon." (Transcript p. 64). Furthermore, this court has previously held that a warrant to search the premises for a specific item authorizes the officers to search any area within those premises where the item reasonably may be found. *Green v. State,* 676 N.E.2d 755, 758 (Ind. App.1996), *trans. denied.* Thus, the officers were authorized to open and search any container found in Allen's apartment, which might reasonably conceal a firearm. *See id.* at 759. As a result, we find that Officer Lappin did not exceed the scope of his authority under the warrant. Consequently, we reject Allen's contention that the evidence seized as a result of the search should not have been admitted against Allen at trial.

Based upon all of the above, we find that a reasonable inference from the totality of the evidence supported the judge's determination that probable cause existed to issue the warrant. *Houser,* 678 N.E.2d at 99. We further conclude that the officers relied upon a valid warrant when executing the search. Accordingly, we conclude that the trial court properly denied Allen's Motion to Suppress.

## II. *Sufficiency of the Evidence*

Next, Allen contends that the State failed to present sufficient evidence to support his conviction. Specifically, he argues that the State failed to establish beyond a reasonable doubt that he actually possessed the cocaine. Allen further asserts that, he was licensed to carry the handgun.[1]

Our standard of review for sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Cox v. State,* 774 N.E.2d 1025, 1028–29 (Ind.Ct. App.2002). We consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences that can be drawn therefrom. *Alspach v. State,* 755 N.E.2d 209, 210 (Ind.Ct.App. 2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Cox,* 774 N.E.2d at 1028–29. A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State,* 731 N.E.2d 438, 439 (Ind.2000).

Indiana Code Section 35–48–4–6, states, in pertinent part:

(a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly, or intentionally possesses cocaine (pure or adulterated), a narcotic drug (pure or adulterated) classified in schedule I or II, or methamphetamine (pure or adulterated) commits possession of cocaine, a narcotic drug, or methamphetamine, a Class D felony, except as provided in subsection (b).

(b) The offense is:

  (1) a Class C felony if:

    (A) the amount of the drug involved (pure or adulterated) weighs three (3) grams or more, or

    (B) the person was also in possession of a firearm (as defined in IC [§ ] 35–47–1–5);

Thus, in order to convict Allen of possession of cocaine and a firearm, the State was required to prove beyond a reasonable doubt that Allen 1) knowingly or intention-

---

1. We note that, at trial, the State specifically noted that Allen was licensed to have a firearm on his premises.

ally; 2) possessed cocaine; 3) while also possessing a firearm. *See* I.C. § 35–48–4–6(b)(1)(B). In challenging the sufficiency of the evidence against him, Allen only asserts that the State presented insufficient evidence to establish that he knowingly possessed the cocaine found in his house.

In the absence of actual possession of drugs and firearms, constructive possession may support a conviction for a drug offense. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind.1999). Constructive possession will support a possession conviction if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband. *Mitchell v. State*, 745 N.E.2d 775, 789 (Ind.2001); *Allen v. State*, 787 N.E.2d 473, 482 (Ind.Ct.App.2003). "Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found." *Id.* (quoting *Martin v. State*, 175 Ind.App. 503, 507, 372 N.E.2d 1194, 1197 (1978)). "Proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control and dominion over the items in question." *Id.* (quoting *Davenport v. State*, 464 N.E.2d 1302, 1307 (Ind. 1984)). A defendant's possessory interest in the premises does not require his actual ownership of the premises. *Id.* "[A] house or apartment used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee." *Id.*

In this case, the record reveals that the cocaine was found in a cigar box in a bathroom that was attached to a bedroom. Inside the cigar box, the police also found a receipt for the purchase of a handgun in Allen's name. The State further presented evidence that Allen received his mail at the address where the drugs and firearm were located. In particular, the record reflects that other documents bearing Allen's name were found in the bedroom that attached to the bathroom where the cocaine was seized. Therefore, we find that Allen had the capability to maintain dominion and control over the drugs and firearm found in his apartment. *Allen*, 787 N.E.2d at 483.

Nevertheless, in arguing that there was insufficient evidence to establish possession, Allen contends that there was at least one other person who resided and was present at his apartment at the time of the search. Where a person's control is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband. These additional circumstance include (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. *Ladd v. State*, 710 N.E.2d 188, 190 (Ind.Ct.App. 1999).

Here, the record reveals that the State knocked several times on the apartment door and announced their presence before entering the apartment. The record also shows that once the officers entered the apartment, Allen was pointing a handgun at them. We find that this evidence is similar to a furtive gesture. Moreover, as we previously held, the officers were within their authority under the warrant to look inside the cigar box. Thus, once they looked inside the cigar box, the cocaine

was within the officers' plain view. Therefore, we find that this evidence fulfills three of the categories of additional circumstances listed above. Drugs were found in plain view, and they were found in close proximity to items owned by Allen. Additionally, Allen made a furtive gesture towards the officers by pointing a handgun at them once they entered the apartment.

Based upon these circumstances, the trial court could have inferred Allen's intent to maintain dominion and control over the cocaine seized as a result of the search of the apartment. *See Ladd,* 710 N.E.2d at 191. Further, because Allen resided in the apartment and apparently in the specific bedroom in which these items were found, we conclude that he also had the capability to maintain dominion and control over the cocaine. We therefore find that the State presented sufficient evidence to establish that Allen knowingly possessed the cocaine found in his apartment.

### III. *Indiana Code Section 35–48–4–6*

Lastly, Allen alleges that Indiana Code Section 35–48–4–6 is unconstitutionally overbroad as applied to elevate the punishment for possession of cocaine with a firearm where the possession of the firearm is in the defendant's own home. Specifically, Allen argues that because the handgun was within the confines of his apartment and he has an enumerated constitutional right to bear arms to defend himself, enhancing the possession of cocaine by lawful possession of a firearm in his own home violates his constitutional right.

A challenge to the constitutionality of a criminal statute must be raised by a motion to dismiss prior to trial. *Wiggins v. State,* 727 N.E.2d 1, 5 (Ind.Ct.App.2000). Ind.Code Ann. § 35–34–1–6 (West 1998); I.C. § 35–34–1–4 (West 1998); *see also Rhinehardt v. State,* 477 N.E.2d 89 (Ind.

1985). The failure to timely raise the issue by a motion to dismiss waives the alleged error. *Wiggins,* 727 N.E.2d at 5.

Here, the record reveals that Allen did not file a motion to dismiss challenging the constitutionality of Indiana Code § 35–48–4–6. Indiana Code § 35–34–1–4(c) requires that all constitutional grounds must be present in a timely motion to dismiss. Those that are not raised in such a motion are waived, regardless of whether the statute's constitutionality was challenged on other grounds. *See Wiggins,* 727 N.E.2d at 5. Although Allen acknowledges that he did not file the necessary motion to raise this issue for our review, nevertheless, he argues that this issue is not waived because the right to keep and bear arms is a constitutional guarantee found in both the United States and Indiana Constitutions. *See James v. Pike County,* 759 N.E.2d 1140, 1143 (a party can challenge the constitutionality of a statute at any stage of a proceeding). However, this court and our supreme court have previously held on several occasions that failure to file a proper motion to dismiss raising a constitutional challenge to a criminal statute waives the issue on appeal. *See Smith v. State,* 727 N.E.2d 763, 766 (Ind.Ct.App.2000); *Payne v. State,* 484 N.E.2d 16, 18 (Ind.1985); *Wiggins,* 727 N.E.2d at 5; *Vaillancourt v. State,* 695 N.E.2d 606, 610 (Ind.Ct.App. 1998); *Reed v. State,* 720 N.E.2d 431, 433 (Ind.Ct.App.1999). Accordingly, we find that Allen has waived this issue for our review. Consequently, we will not address this argument for failure to raise the issue properly.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly convicted Al-

len of Count I, possession of cocaine and a firearm, a Class C felony.

Affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I would first note that Counts I and II did not allege separate and distinct crimes. Rather, Count I alleged possession of cocaine as also alleged in Count II, but added that Allen also possessed a handgun at the time, thereby elevating the offense from a Class D felony to a Class C felony. The only viable conviction and that upon which Allen was sentenced was for the elevated Class C felony.

With regard to Issue I(A) concerning our standard of review, I would add a parenthetical note to the majority's correct statement of the standard as applied to the case before us. That parenthetical note is to the effect that if the trial court's review of the magistrate's issuance of a warrant results in suppression of the evidence so seized, the deference to be given by the appellate court review in an interlocutory appeal by the State, may, to a degree, be conflicted. *See Breitweiser v. State*, 704 N.E.2d 496, 502 (Ind.Ct.App.1999) (Sullivan, J., concurring).