Samara J. COPAS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 33A01–0801–CR–3.

Court of Appeals of Indiana.

Aug. 13, 2008.

James H. Voyles, Frederick Vaiana, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Samara J. Copas brings this interlocutory appeal from the trial court's denial of her motion to suppress evidence. Copas raises a single issue for our review, which we restate as whether the State's seizure of a blood sample from Copas while she was unconscious was supported by probable cause, as required by the Fourth Amendment to the United States Constitution.[1]

We affirm.

---

1. Although Copas makes passing references to Article I, Section 11 of the Indiana Constitution, she does not present any claim or argument that Section 11 requires a different analysis or yields a different result than that produced under the Fourth Amendment. Accordingly, we do not consider the state constitutional issue on appeal. *See, e.g., D.L. v. State*, 877 N.E.2d 500, 503 (Ind.Ct.App.2007) ("Because [the appellant] cites no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from his Fourth Amendment analysis, we resolve his claim on the basis of federal constitutional doctrine only."), *trans. denied.*

## FACTS AND PROCEDURAL HISTORY

On May 20, 2006, shortly after 1:15 a.m., Jerry E. Clapp was driving along County Road 500 S in Henry County. As he approached the intersection of County Road 500 S and State Road 103, he observed a white vehicle on the side of the road near a small SUV, which was inverted. Clapp called 911, exited his vehicle, and saw a woman, later identified as Copas, lying on the ground outside the white vehicle, on the driver's side. Clapp noticed Copas was breathing and tried to inform her that paramedics were on the way, but she was nonresponsive. Clapp also noticed broken alcoholic beverage containers in the white vehicle, and the odor of alcohol coming from that vehicle, but did not notice an alcoholic odor on Copas. Clapp then went to the inverted SUV and informed its driver, later identified as Charles McAlhaney, to "hang in there" and that paramedics were on the way. Transcript at 28. Clapp did not receive a response from McAlhaney, but McAlhaney made "gurgling" sounds that indicated to Clapp that McAlhaney "was drowning in his blood." Id. at 28–29.

At approximately 1:30 a.m., Henry County Deputy Sheriff Michael Rossiter responded to the accident. Deputy Rossiter observed Copas lying on the ground unconscious on the driver's side of a white Chevrolet Suburban. Deputy Rossiter approached the Suburban, in which he noticed shattered alcoholic beverage containers in the driver's seat and on the floorboard in front of the driver's seat. Deputy Rossiter also noticed the smell of alcohol inside the Suburban. Deputy Rossiter did not notice "an odor of alcoholic beverage on" Copas. Id. at 14. When paramedics arrived, Clapp and Deputy Rossiter helped transfer Copas onto a backboard. Copas was then placed in an ambulance and taken to the Henry County Hospital. McAlhaney died at the scene of the accident shortly after the arrival of the emergency personnel.

Sometime over the next hour and a half, Deputy Rossiter prepared a search warrant affidavit, submitted that affidavit to the Henry Superior Court, and received a search warrant. In the affidavit, Deputy Rossiter requested permission to seize a blood sample from Copas, who was unable to give consent due to her unconsciousness, in connection with "evidence of the crime of operating while intoxicated." State's Exh. 1 at 1. Deputy Rossiter stated the following facts as support for his belief that Copas had operated a vehicle while intoxicated at the time of the accident: (1) Copas was an "occupant" of the "Suburban involved in crash"; (2) Deputy Rossiter saw "alcohol beverage containers in view"; (3) the "vehicle smelled of alcohol"; and (4) Jerry Clapp told Deputy Rossiter that Copas "indicated she was in white vehicle and no one else in area of crash." Id. at 1–2. At about 3:00 a.m., Deputy Rossiter executed the search warrant, through medical staff, at the Henry County Hospital. That blood sample allegedly revealed that Copas had a blood alcohol level of 0.15, and it also allegedly revealed that Copas had cocaine in her blood.

On August 31, 2006, the State charged Copas with Causing Death When Operating a Motor Vehicle with Alcohol in the Body, as a Class B felony; Causing Death When Operating a Motor Vehicle with Schedule II Controlled Substance in the Body, as a Class B felony; and Reckless Homicide, a Class C felony. On June 22, 2007, Copas filed a motion to suppress the "blood evidence" on the grounds that the search warrant permitting the seizure of that evidence lacked supporting probable cause, as required by federal and state law. Appellant's App. at 40–42. On Octo-

ber 11, 2007, the trial court held a hearing on the motion to suppress, which the court denied on November 21, 2007. The court certified its decision for interlocutory appeal on December 4, 2007, which we accepted.

## DISCUSSION AND DECISION

■■ Copas contends that the trial court erred in denying her motion to suppress the blood evidence seized pursuant to the search warrant because that search warrant was not supported by probable cause, as required by the Fourth Amendment. Our standard of review here is well-established:

> In deciding whether to issue a search warrant, "the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. 462 U.S. at 238–39, 103 S.Ct. 2317. It is clear that a substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* at 98. In this review, we consider only the evidence presented to the issuing magistrate and not post hoc justifications for the search. *Seltzer v. State*, 489 N.E.2d 939, 941 (Ind.1986).

*Query v. State*, 745 N.E.2d 769, 771 (Ind. 2001). "Significantly, 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Eaton v. State*, 889 N.E.2d 297, 299 (Ind.2008) (quoting *Gates*, 462 U.S. at 245 n. 13, 103 S.Ct. 2317).

■■ The seizure of blood from the body is not a new issue in Fourth Amendment jurisprudence. In *Schmerber v. California*, 384 U.S. 757, 769–70, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court noted, in the context of a warrantless seizure of blood evidence, that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained." And "[i]n the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." *Id.* at 770, 86 S.Ct. 1826. However, while "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State," its "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 767–68, 86 S.Ct. 1826; *Carr v. State*, 728 N.E.2d 125, 128 (Ind.2000).

■■ As an initial matter, Copas suggests that "[t]he search warrant failed to allege an accident occurred resulting in serious bodily injury or death in an effort to meet statutory criteria." Appellant's Brief at 6. But Indiana's implied consent laws do not apply here, for two reasons. First, Copas was unconscious, and the implied consent laws do not require a law

enforcement officer to offer a chemical test to an unconscious person. *See* Ind.Code §§ 9–30–6–2(b)(1), 9–30–7–3(c) (2004). Second, Deputy Rossiter seized Copas' blood pursuant to a search warrant. "The provisions of the implied consent law do not act either individually or collectively to prevent a law enforcement officer from obtaining a blood sample pursuant to a search warrant." *Brown v. State*, 774 N.E.2d 1001, 1007 (Ind.Ct.App.2002), *trans. denied*.

■ Copas also asserts that, under *Schmerber*, there is a higher burden on the State to seize blood evidence. We respectfully disagree. *Schmerber*, while useful for general Fourth Amendment guidance, is not controlling because the police in that case acted without a warrant. "Searches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Logan v. State*, 729 N.E.2d 125, 129 (Ind.2000) (quoting *Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind.1999)). Here, unlike in *Schmerber*, the police acted pursuant to a warrant. We review the validity of that warrant accordingly.

■ Again, the State seized a sample of Copas' blood from her body pursuant to a search warrant. As such, in order for that seizure to have been proper, the State needed to have probable cause that her blood would reveal evidence of criminal behavior. *See, e.g.*, I.C. § 35–33–5–1 ("A court may issue warrants only upon proba-

ble cause...."). That is, the State was required to show probable cause that Copas both operated the Suburban and did so while intoxicated. "[T]he amount of evidence needed to supply probable cause of operating while intoxicated is minimal." *Hannoy v. State*, 789 N.E.2d 977, 989 (Ind. Ct.App.2003), *aff'd on reh'g*, 793 N.E.2d 1109 (Ind.Ct.App.2003), *trans. denied*.

■ The totality of the circumstances stated in Deputy Rossiter's probable cause affidavit is indeed minimal; nonetheless, it is sufficient to establish probable cause that Copas' blood would reveal evidence of criminal behavior. Specifically, the affidavit reveals the following facts: (1) Copas was involved in a motor vehicle accident; (2) Deputy Rossiter "observed ... alcohol beverage containers in view"; and (3) Copas' "vehicle smelled of alcohol." State's Exh. 1 at 1. The affidavit also stated that Copas was "unable to consent" to giving a blood sample. *Id.* at 2. And we note that the alcoholic odor emanated only from Copas' vehicle, not from Copas.[2]

Copas is correct that, taken individually, the facts supporting the search warrant are insufficient to establish probable cause that she operated a vehicle while intoxicated. For example, in *Hannoy*, we held that the policy of the Marion County Sheriff's Department of seizing, forcibly if necessary, blood samples from the driver of any vehicle involved in an automobile accident was unconstitutional when done without either consent or probable cause. 789 N.E.2d at 987. And in *Duncan v. State*, 799 N.E.2d 538, 543–44 (Ind.Ct.App.2003),

---

**2.** The probable cause affidavit itself does not contain this information. As we have discussed in the past, "a probable cause affidavit must include all material facts," including "those facts that 'cast doubt on the existence of probable cause.'" *Ware v. State*, 859 N.E.2d 708, 718 (Ind.Ct.App.2007) (quoting

*Query*, 745 N.E.2d at 772), *trans. denied.* "When the State has failed to include a material term in its application, we will determine the validity of the warrant by considering the omitted information and the information contained in the affidavit together." *Id.*

we held that probable cause was not established where the officer "indicated on the affidavit for probable cause that his sole basis for believing [the defendant] was intoxicated was that he saw 'alcohol beverage containers in view.'" Further, we agree with Copas' assertion that, following a motor vehicle accident, "broken bottles of alcohol in the car, and the logical odor emanating therefrom, is not *per se* illegal. . . ." Appellant's Brief at 10.

Nonetheless, we must consider the totality of the circumstances rather than facts in isolation. The totality of the circumstances demonstrates, within a fair probability, that Copas operated the Suburban.[3] The probable cause affidavit placed Copas at the scene of the accident, and specifically stated that there was "no one else in [the] area of [the] crash."[4] State's Exh. 1 at 2. And the totality of the circumstances demonstrates a fair probability that Copas operated the Suburban while intoxicated. There was a vehicular accident, and alcoholic beverage containers, accompanied by the smell of alcohol, were discovered in the Suburban.

All the relevant facts must be taken together, and the conclusion that Copas was operating the Suburban while intoxicated, while not a necessary conclusion, is within the "fair probability" required to establish probable cause. *See Query,* 745 N.E.2d at 771. While Copas might ultimately challenge the sufficiency of the State's evidence at trial, her arguments are not enough to defeat the "fair probability" that she operated the vehicle while intoxicated, which is all that is required for probable cause. *See, e.g., Ware v. State,* 859 N.E.2d 708, 720 (Ind.Ct.App.2007) ("The amount of evidence necessary to meet the probable cause requirement . . . is determined on a case-by-case basis, and is less than the level of proof necessary to establish guilt beyond a reasonable doubt.") (quoting *Ross v. State,* 844 N.E.2d 537, 542 (Ind.Ct.App.2006)), *trans. denied.* Accordingly, we affirm the trial court's denial of Copas' motion to suppress the blood evidence.

Affirmed.

DARDEN, J., and BROWN, J., concur.

---

**3.** Specifically, Copas states that "[t]he State's only evidence to support the 'operation' element is circumstantial. Copas is simply found outside a car registered to her by Clapp. Not one witness saw her operate the Suburban." Appellant's Brief at 11. We note that neither the record from the motion to suppress hearing, the search warrant, nor Deputy Rossiter's probable cause affidavit reflects that the Suburban was registered to Copas.

**4.** Although the affidavit states that Copas told Clapp that she had been an occupant of the Suburban, Clapp testified at the motion to suppress hearing that he did not make that statement to Deputy Rossiter.