Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 17 2014, 8:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PAUL J. PODLEJSKI**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS BOARDMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1401-CR-8 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1308-FB-1534

**October 17, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Thomas Boardman ("Boardman") was convicted Madison Circuit Court of two counts of Class B felony dealing in methamphetamine, one count of Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance, and Class B misdemeanor false informing. Boardman appeals his methamphetamine-related convictions arguing that the evidence is insufficient to support his convictions.

We affirm.

### Facts and Procedural History

In early August 2013, Boardman accompanied his friend, Jacob Dial ("Dial") from Missouri to Indiana because Dial, who resided in both states, had a doctor's appointment in Elwood. When they arrived in Indiana, Boardman purchased numerous items from Walmart and a dollar store. Dial purchased Sudafed from Walgreens. Boardman and Dial stayed at 1019 North 11th Street in Elwood, a vacant home owned by Dial's daughter.

On August 9, 2013, Captain Jason Brizendine of the Madison County Drug Task Force ("Captain Brizendine") received a tip that methamphetamine was being manufactured at 1019 North 11th Street. Captain Brizendine and Elwood Police Officer Bert Chambers proceeded to the home to investigate.

Dial responded to the knock on the front door and came out of the house to speak with the officers. Dial told the officers no one else was in the house and he did not know who owned the property. However, he later admitted that his daughter owned the house.

2

Shortly thereafter, Boardman, who was inside the house, came to the front door. When asked, Boardman falsely told the officers that his name was Justin. He appeared to be nervous and could not recall his birth date or social security number.

The officers contacted Dial's daughter. She came to the house and gave the officers consent to search. The house was extremely cluttered with trash and various household items. As the officers entered the kitchen, the smelled a strong chemical odor associated with the manufacture of methamphetamine.

A search of the kitchen revealed drain cleaner, Coleman fuel, salt, cold packs containing ammonium nitrate, tools commonly used to cut batteries open to obtain lithium, and a plastic bottle. The officers also found an eyeglasses case containing seven small individual baggies of a white powder later identified as methamphetamine. Captain Brizendine also found a glass jar containing a liquid with a coffee filter sitting on top. The liquid later tested positive for the presence of methamphetamine. In the bathroom, the officers found a plastic bottle with plastic tubing, which is used as an HCl generator in the manufacture of methamphetamine.

The State charged Boardman with two counts of Class B felony dealing in methamphetamine, Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance and Class B misdemeanor false informing. A three-day jury trial commenced on November 12, 2013.

At trial, Captain Brizendine described the one-pot process of manufacturing methamphetamine and testified that methamphetamine had been manufactured inside the house within hours of the officers' arrival. Tr. p. 254. Dial, who was granted immunity

3

for the testimony given at Boardman's trial, testified that Boardman told Dial that he had "dope" and he wanted to get rid of it. Tr. p. 388. However, Dial claimed that he was unaware that there was methamphetamine in the home and he did not know where the items used to manufacture methamphetamine came from.

A neighboring homeowner, Kaylee Kelly ("Kelly") stated that Dial told her to keep her children away from the house because "they were manufacturing." Tr. p. 428. Kelly also testified that the tenant residing in the home's adjacent garage apartment told her that Dial asked him to purchase Sudafed. Tr. pp. 439-40. Dial also admitted to purchasing Sudafed. Finally, Kelly testified that she saw Boardman in front of the house giving a white substance wrapped in cellophane to an individual on a moped. Tr. p. 430-33.

The jury found Boardman guilty as charged. A sentencing hearing was held on December 2, 2013. Boardman was sentenced to concurrent terms on all four counts, and he received an aggregate sentence of ten years executed. Boardman now appeals.

**Discussion and Decision**

When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005)), trans. denied. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion

4

that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

Boardman was convicted of possessing methamphetamine "with intent to deliver", knowingly or intentionally manufacturing methamphetamine, and possessing two or more chemical reagents or precursors with intent to manufacture methamphetamine. See Appellant's App. pp. 4-5; see also Ind. Code §§ 35-48-4-1.1(a), 35-48-4-14.5(e). He argues that the evidence was insufficient to support his convictions because the State failed to prove his intent to maintain control and dominion over the methamphetamine, chemical reagents, and precursors found during the search of the house.

A conviction for possession of contraband may rest upon proof of either actual or constructive possession. See Britt v. State, 810 N.E.2d 1077 (Ind. Ct. App. 2004). "Actual possession occurs when the defendant has direct physical control over the item, while constructive possession involves the intent and capability to maintain control over the item even though actual physical control is absent." Id. at 1082.

"Constructive possession will support a possession conviction if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband." White v. State, 772 N.E.2d 408, 413 (Ind. 2002). "Where control is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband." Id. Additional circumstances include: 1) incriminating statements made by the defendant; 2) attempted flight or furtive gestures; 3) a drug manufacturing setting; 4) proximity of the

5

defendant to the drugs; 5) drugs in plain view; and 6) drugs in close proximity to items owned by the defendant. Allen v. State, 798 N.E.2d 490, 501 (Ind. Ct. App. 2003).

In this case, Boardman and Dial were staying in the vacant home owned by Dial's daughter while they were in Elwood. Boardman told Dial that he had "dope" and wanted to get rid of it. Tr. p. 388. Dial told neighbor Kaylee Kelly to keep her children away from the house because "they were manufacturing." Tr. p. 428. That same day, Kelly saw Boardman hand a cellophane wrapped package containing a white substance to a man on a moped. Kelly also testified that she smelled an odor she knew to be associated with the manufacture of methamphetamine emanating from the house. Tr. pp. 434-35.

Captain Brizendine and Officer Bert Chambers received a tip that someone was manufacturing methamphetamine at the home. They proceeded to the home to investigate and Boardman initially lied to the officers about his name and identifying information. Boardman also seemed nervous. The officers entered the home after they obtained consent from Dial's daughter and noted a strong chemical odor associated with the manufacture of methamphetamine. Captain Brizendine testified that based on the strength of the smell, he believed that methamphetamine had been "cooked" in the house no more than ten hours before the officers arrived. Tr. p. 254.

In the kitchen, Captain Brizendine found a glass jar containing liquid with a coffee filter on the top. The liquid in the jar field tested positive for the presence of methamphetamine. Tr. p. 257. Captain Brizendine also found a Budweiser beer box near the kitchen counter, which contained the following chemical reagents and precursors used in the manufacture of methamphetamine: sulfuric acid, Coleman fuel, cold packs

6

containing ammonium nitrate, sodium hydroxide, salt, and tools used to strip lithium from batteries.

In the Budweiser box, the officers also found a baseball cap containing a box of cigarettes and an eyeglasses case. Dial testified that the baseball cap and cigarettes were the type Boardman owned. Tr. p. 384. The eyeglasses case contained several individually wrapped packages of methamphetamine. Tr. p. 262. Captain Brizendine testified that methamphetamine is usually packaged individually when it is intended "for sale." Tr. p. 264. Finally, in the bathroom, Captain Brizendine found an HCl generator, i.e. where sulfuric acid and salt are combined to produce hydrochloric acid gas, which is used in the manufacture of methamphetamine. Tr. p. 262. From this evidence, Captain Brizendine concluded that methamphetamine had been manufactured at the residence.

This evidence establishes that Boardman had the capability and the intent to maintain dominion and control over the methamphetamine, chemical reagents and precursors found in the house. See White, 772 N.E.2d at 413. And the State proved that methamphetamine had been manufactured inside the house within hours of the officers' arrival. For all of these reasons, we conclude that sufficient evidence supports Boardman's convictions for two counts of Class B felony dealing in methamphetamine and one count of Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.