Alan HOOVER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A05–0907–CR–423.

Court of Appeals of Indiana.

Dec. 31, 2009.

Rehearing Denied March 9, 2010.

Steven C. Litz, Monrovia, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Alan Hoover was charged with murder, felony murder, and Class A felony robbery. Robbery was the predicate offense for the alleged felony murder. A jury acquitted Hoover of murder, deadlocked on felony murder, and convicted him of robbery. Indiana's double jeopardy statutes bar retrial for the same offense if "the former prosecution resulted in an acquittal or a conviction of the defendant (A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.)...." Ind.Code § 35–41–4–3(a). We therefore conclude that Hoover's conviction for the underlying robbery precludes retrial on the greater, mistried count of felony murder. We further hold that the jury verdicts are not inconsistent, and in making that determination we do not take into account hung counts. Further, there is

sufficient evidence to sustain Hoover's robbery conviction, Hoover is unable to show prejudice from the trial court's allegedly deficient felony-murder instruction, and the trial court did not err by refusing to instruct the jury on the lesser-included offense of theft. We affirm Hoover's robbery conviction but remand with instructions to dismiss the felony-murder count with prejudice.

### Facts and Procedural History

Hoover was forty-six years old and lived in Mooresville, Indiana. He had a nineteen-year-old daughter Casi and a son-in-law named Jon. Hoover was also lifelong friends with a man named Mike Wilson. In late summer 2008, Hoover needed a place to stay. He moved into Wilson's trailer and lived with Wilson for approximately two months. Toward the end of October, however, Wilson requested that Hoover move out.

On the evening of October 26, Wilson went to a bar to play pool and throw darts. Later on he stopped by a friend's trailer. Witnesses saw Wilson that night with his cell phone, keys, and a large amount of cash. Wilson returned home around 12:26 a.m. Meanwhile Hoover was spending the evening with Casi and Jon. The three of them watched television together at Jon's parents' house in Wilbur, Indiana. Hoover left sometime between 11:30 and 11:50 p.m.

Afterward Hoover drove to Wilson's trailer allegedly to retrieve some belongings. Wilson was inside. Hoover and Wilson soon fought. According to Hoover, Wilson was intoxicated and attacked him with a walking stick. Hoover began punching wildly. He struck Wilson several times. They fell over some cement blocks in the trailer hallway, and Wilson wound up unconscious.

At about 12:45 a.m., Hoover returned to Jon's parents' house and knocked on Casi and Jon's bedroom door. He told them that he had just been in a fight and that Wilson was unconscious. Hoover asked Casi and Jon to come with him to Wilson's trailer in case Wilson woke up. He wanted to "get the rest of his stuff because he didn't want to have to confront Wilson again if he was awake when [they] got back." Tr. p. 575. Jon drove Hoover and Casi to the trailer. They took Jon and Casi's car. Hoover left his own car outside Jon's parents' house. On the way to Wilson's trailer, Hoover told Casi that he had taken Wilson's keys so that Wilson would be unable to leave if he awoke.

Jon, Casi, and Hoover arrived at the trailer and found Wilson lying dead or unconscious in the hallway. They stood around talking and apparently had trouble deciding what to do. Hoover picked up a DVD player from the TV stand. He said it was his and took it out to the car. The three of them walked in and out of the trailer, smoked cigarettes, checked Wilson's pulse, but ultimately called 911. At some point Casi saw Hoover take money from Wilson's wallet and place the wallet back in Wilson's pocket.

Police were dispatched to the trailer. Paramedics attempted to revive Wilson but pronounced him dead at the scene. An autopsy later revealed that Wilson died from blunt force trauma to the back of the head. Detectives noticed that there was no money in Wilson's wallet. Law enforcement also went to Jon's parents' house to impound Hoover's car. Police found what was later confirmed as Wilson's cell phone lying on the ground in front of Hoover's vehicle. When Hoover was taken into custody, police found two sets of keys on his person, one of which belonged to Wilson.

The State charged Hoover with murder, felony murder, and Class A felony rob-

bery. The charging information alleged as follows:

1. ... [O]n or about October 26 or 27, 2008, in Morgan County, State of Indiana, Alan James Hoover did knowingly kill another human being, to-wit: Michael R. Wilson.

2. ... [O]n or about October 26 or 27, 2008, in Morgan County, State of Indiana, Alan James Hoover did kill another human being, to-wit: Michael R. Wilson, while committing or attempting to commit robbery.

3. ... [O]n or about October 26 or 27, 2008, in Morgan County, State of Indiana, Alan James Hoover did knowingly take property, to-wit: United States currency, keys and/or a cell phone, from another person or in the presence of another person, to-wit: Michael J. Wilson, by using force on any person, to-wit: Michael J. Wilson, resulting in serious bodily injury to any person other than the defendant, to-wit: Michael J. Wilson.

Appellant's App. p. 35.

At trial Hoover tendered two final instructions which were refused by the trial court. His first proposed instruction concerned felony murder:

The court has instructed you that in order to convict Mr. Hoover of felony murder, the State must prove that he killed Mr. Wilson while committing robbery. You are further instructed that the robbery and the killing must be part of one uninterrupted transaction that is continuous in its purpose and objective. In other words, to convict Mr. Hoover of felony murder, you must first find that Mr. Hoover committed robbery. You must then find that Mr. Wilson's death was a direct result of that robbery.

Id. at 86. The trial court denied Hoover's requested language and instructed the jury that "[t]he elements of Felony Murder as charged in this case are that the accused must, in Morgan County, Indiana: (1) kill (2) another human being (3) while committing or attempting to commit robbery." Id. at 102. Hoover also asked for an instruction on the lesser-included offense of theft. The trial court denied this request as well and instructed the jury only on Class A felony robbery: "The elements of Robbery as charged in this case are that the accused must, in Morgan County, Indiana: (1) knowingly (2) take property from another person or from the presence of another person (3) by using force on any person (4) resulting in serious bodily injury to any person other than a defendant." Id. at 103. With regard to intentional murder, the jury was instructed that "[t]he elements of Murder as charged in this case are that the accused must, in Morgan County, Indiana: (1) knowingly (2) kill (3) another human being." Id. at 99.

Hoover was found guilty of robbery but not guilty of murder. The jury was unable to reach a unanimous decision on felony murder. The trial court entered judgment on the conviction for robbery and dismissed the felony-murder charge without prejudice. Hoover now appeals.

## Discussion and Decision

Hoover raises five issues which we reorder and restate as follows: (I) whether the jury verdicts are inconsistent, (II) whether there is insufficient evidence to sustain his robbery conviction, (III) whether the trial court erred by refusing his tendered instruction on felony murder, (IV) whether the trial court erred by refusing to instruct the jury on simple theft, and (V) whether double jeopardy bars retrial for felony murder.

### I. Verdict Inconsistency

Hoover argues that the verdicts returned in this case are irreconcilable and

that his robbery conviction should therefore be set aside. Jury verdicts are not reviewable for inconsistency under federal law, *United States v. Powell,* 469 U.S. 57, 69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932), but Indiana courts "ha[ve] looked and will continue to look at verdicts to determine if they are inconsistent." *Marsh v. State,* 271 Ind. 454, 393 N.E.2d 757, 761 (1979); *accord Powell v. State,* 769 N.E.2d 1128, 1131 (Ind.2002), *reh'g denied.* When we review a claim of verdict inconsistency, we take corrective action only when the verdict is extremely contradictory and irreconcilable. *Powell,* 769 N.E.2d at 1131. A jury verdict may be inconsistent or even illogical but nevertheless permissible if it is supported by sufficient evidence. *Id.* In resolving a claim of verdict inconsistency, we neither interpret nor speculate about the thought process or motivation of the jury in reaching its verdict. *Id.* Further, an acquittal on one count and a conviction on another will survive a claim of inconsistency if there is sufficient evidence to support the conviction. *Id.* "An acquittal on one count normally will not result in reversal of a conviction on a similar or related count, because the former will generally have at least one element (legal or factual) not required for the latter. In such an instance, the finder of fact will be presumed to have doubted the weight or credibility of the evidence presented in support of this distinguishing element." *Neuhausel v. State,* 530 N.E.2d 121, 123 n. 2 (Ind.Ct.App.1988).

▄ We first note that Hoover asks us to reconcile (1) his conviction of robbery, (2) his acquittal of murder, and (3) the jury's inability to reach a decision on felony murder. However, our review is for "verdict" inconsistency, and mistried counts are not verdicts. *See Black's Law*

*Dictionary* 1592 (8th ed.2004) (a "verdict" is a "jury's finding or decision on the factual issues of a case"); *id.* at 873 (a "hung jury" is a "jury that cannot reach a verdict by the required voting margin"); *id.* at 1023 (a "mistrial" is a "trial that ends inconclusively because the jury cannot agree on a verdict"). The United States Supreme Court also recently explained that

> [b]ecause a jury speaks only through its verdict, its failure to reach a verdict cannot—by negative implication—yield a piece of information that helps put together the trial puzzle.... Unlike the pleadings, the jury charge, or the evidence introduced by the parties, there is no way to decipher what a hung count represents.... A host of reasons—sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few—could work alone or in tandem to cause a jury to hang. To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork. Such conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return.

*Yeager v. United States,* —— U.S. ——, ———–——, 129 S.Ct. 2360, 2367–68, 174 L.Ed.2d 78 (2009) (concluding that hung counts have no meaning for purposes of double jeopardy collateral estoppel analysis). We therefore decline to take into account the hung felony-murder count when assessing the alleged inconsistency in the unanimous verdicts. Our analysis proceeds solely with respect to Hoover's conviction of robbery and acquittal of murder.

▄ Here the jury was instructed that "[t]he elements of Murder as charged in

this case are that the accused must, in Morgan County, Indiana: (1) knowingly (2) kill (3) another human being." Appellant's App. p. 99. "The elements of Robbery as charged in this case are that the accused must, in Morgan County, Indiana: (1) knowingly (2) take property from another person or from the presence of another person (3) by using force on any person (4) resulting in serious bodily injury to any person other than a defendant." *Id.* at 103. The jury acquitted Hoover of murder but convicted him of robbery. The jury may have concluded that Hoover did not "knowingly" kill Wilson but that he did take property from Wilson by using force resulting in serious bodily injury. The jury verdicts are therefore not inconsistent.

## II. Sufficiency of the Evidence

■ Hoover alternatively argues that there is insufficient evidence to sustain his robbery conviction. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Fought v. State*, 898 N.E.2d 447, 450 (Ind.Ct.App.2008). We will consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* A conviction may be based upon circumstantial evidence alone. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

Indiana's robbery statute provides as follows:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a ... Class A felony if it results in serious bodily injury to any person other than a defendant. Ind.Code § 35–42–5–1. The State specifically alleged that Hoover took Wilson's money, keys, and/or cell phone by using force, and that the robbery resulted in Wilson's serious bodily injury.

■ The evidence most favorable to the verdict reveals that Hoover entered Wilson's trailer and engaged in a physical confrontation. Hoover struck Wilson several times. Wilson died from blunt force trauma to the head. The evidence further reveals that Hoover took Wilson's keys and cell phone sometime immediately after the melee. In light of the foregoing, we find sufficient evidence from which a jury could conclude that Hoover knowingly or intentionally took property from Wilson by using force and that Wilson sustained serious bodily injury as a result thereof. There is sufficient evidence to sustain Hoover's conviction.

## III. Felony–Murder Instruction

■ Hoover argues that the trial court erred by refusing his tendered instruction on felony murder. The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind.2003). Instructing the jury lies within the sole discretion of the trial court, and considering the instructions as a whole and in reference to each other, we will not reverse for an abuse of that discretion unless the instructions mislead the jury as to the law in the case. *Carter v. State*, 766

N.E.2d 377, 382 (Ind.2002), *reh'g denied.* When a trial court gives or refuses a tendered instruction, we consider whether the instruction: (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Overstreet,* 783 N.E.2d at 1164. We will review the instruction *de novo* if the challenge is that it incorrectly states the law. *Id.* However, if the challenge is that the instruction is not supported by the evidence in the record or that the substance is not covered by other instructions, we will reverse only if the trial court has abused its discretion. *Id.*

Indiana Code section 35–42–1–1 provides that "[a] person who ... kills another human being while committing or attempting to commit ... robbery ... commits murder, a felony." Our Supreme Court analyzed the required nexus between felony murder and predicate offenses in *Mahone v. State,* 541 N.E.2d 278 (Ind.1989). In *Mahone,* the Court noted that "[a] crime that is continuous in its purpose and objective is deemed to be a single uninterrupted transaction." 541 N.E.2d at 280 (quoting *Eddy v. State,* 496 N.E.2d 24, 28 (Ind.1986)). The *Mahone* Court concluded that "when the killing and the robbery constitute a single on going occurrence, the jury is justified in finding that the perpetrator is guilty of a violation of the murder/felony statute." *Id.; see also State v. Seabrooks,* 803 N.E.2d 1190, 1195 n. 7 (Ind.Ct.App.2004) ("*Mahone* requires an 'uninterrupted transaction' ....").

Here the trial court instructed the jury that "[t]he elements of Felony Murder as charged in this case are that the accused must, in Morgan County, Indiana: (1) kill (2) another human being (3) while committing or attempting to commit robbery." Appellant's App. p. 102. The court's instruction tracked the language of Section

35–42–1–1. Hoover's tendered instruction specified that "the robbery and killing must be part of one uninterrupted transaction that is continuous in its purpose and objective. In other words, to convict Mr. Hoover of felony murder, you must first find that Mr. Hoover committed robbery. You must then find that Mr. Wilson's death was a direct result of that robbery." *Id.* at 86. Hoover's instruction drew from the holdings in *Mahone* and *Seabrooks.*

■ Even if we assumed without deciding that the court erred by refusing Hoover's tendered instruction, we would have no basis to find prejudice in this case. The jury did not convict Hoover of felony murder. It was unable to reach a decision on that count. As a practical matter we cannot find reversible error if there is no conviction to reverse.

## IV. Theft Instruction

■ Hoover argues that the trial court erred by refusing to instruct the jury on the lesser-included offense of theft. "A requested instruction for a lesser included offense of the crime charged should be given if the lesser included offense is either inherently or factually included in the crime charged, and if, based upon the evidence presented in the case, there existed a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense such that a jury could conclude that the lesser offense was committed but not the greater." *McKinney v. State,* 873 N.E.2d 630, 644 (Ind.Ct.App.2007) (quoting *Ellis v. State,* 736 N.E.2d 731, 733 (Ind.2000)), *trans. denied.*

■ To determine whether a lesser-included offense is inherently included in a charged crime, the court compares the elements of the two relevant statutes. *Hauk v. State,* 729 N.E.2d 994, 998 (Ind.2000). The requested lesser-included offense is

inherently included in the charged crime if (a) the parties could establish commission of the claimed lesser-included offense by proof of the same material elements or less than all of the material elements of the charged crime or (b) the only feature distinguishing the claimed lesser-included offense from the charged crime is that a lesser culpability is required to establish commission of the lesser-included offense. *Id.* Theft is inherently included in robbery. *Id.*

■ We next must determine whether a serious evidentiary dispute existed concerning the element distinguishing the two crimes—use of force—whereby the jury could have concluded that Hoover committed theft but not robbery. Here there was no dispute that Hoover struck Wilson inside the trailer. Wilson was found dead and had suffered blunt force trauma to the head. Hoover took Wilson's keys and cell phone sometime immediately after the confrontation. He told Casi on the way back to the trailer that he had taken the keys, and law enforcement recovered the cell phone near Hoover's vehicle at Jon's parents' house. Accordingly, there is no question that Hoover stole Wilson's keys and cell phone immediately after or in the course of the physical confrontation, and thus no dispute that he took Wilson's property by using force.

To be sure, the State alleged in the alternative that Hoover committed robbery by taking Wilson's money. Hoover stresses that there was no evidence Wilson's cash was taken contemporaneously with the trailer fight. The evidence showed that Hoover took Wilson's money only after leaving and returning to the trailer with Casi and Jon. Hoover contends that this latter taking was accomplished without the use of force and therefore supported a theft instruction. We do not agree that a time lapse between the use of force

and the taking of property necessarily converts robbery into simple theft, especially where, as here, the perpetrator evinces an intent to return to the scene of the confrontation to retrieve more items. Our courts have held that "when the robbery and the violence are so closely connected in point of time, place, and continuity of action, they constitute one continuous scheme or transaction." *Young v. State,* 725 N.E.2d 78, 81 (Ind.2000). Such concurrence and "continuity of action" was present in this case. Despite Hoover's temporary departure from the trailer, his taking of Wilson's money was accomplished by the same use of force as his taking of Wilson's cell phone and keys. *Cf. Coleman v. State,* 653 N.E.2d 481, 483 (Ind.1995) ("[The defendant's] use of force was necessary to accomplish the theft ... and was thus part of the robbery."). We conclude there was no serious evidentiary dispute in this case regarding the use of force, and the trial court did not err by refusing Hoover's tendered theft instruction.

### V. Retrial on Felony Murder

■ Hoover finally argues that double jeopardy bars his retrial on the mistried count of felony murder. The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Article 1, Section 14 of the Indiana Constitution also provides that "[n]o person shall be put in jeopardy twice for the same offense." Generally speaking, retrial following a hung jury does not violate the Double Jeopardy Clause. *Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *accord Young v. State,* 482 N.E.2d 246, 249 (Ind.1985) ("It is well settled that a hung jury operates to discharge the operation of double jeopardy and a new trial is not barred in such a

situation."). "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Id.* at 325, 104 S.Ct. 3081. This case, however, involves two potentially complicating factors. The jury not only hung on felony murder. It also convicted Hoover of robbery and acquitted him of murder.

### A. Effect of the Murder Acquittal

Hoover focuses on his murder acquittal as the preclusive factor. He argues that he "was acquitted of murder. The jury's answer to the question 'Did Alan Hoover knowingly kill Mike Wilson' was 'No.' A new jury may not be asked to relitigate that question as it pertains to felony murder." Appellant's Br. p. 18.

Hoover's argument invokes the doctrine of collateral estoppel. Collateral estoppel, also known as issue-preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel is a component of the Fifth Amendment's double jeopardy protections. *Id.* at 445, 90 S.Ct. 1189. However, collateral estoppel " 'will not often be available to a criminal defendant,' for 'it is not often possible to determine with precision how the judge or jury has decided any particular issue.' " 5 Wayne R. Lafave et al., *Criminal Procedure* § 17.4(a) (3d ed.2007) (quoting Walter V. Schaefer, *Unresolved Issues in the Law of Double Jeopardy:* Waller *and* Ashe, 58 Cal. L.Rev. 391, 394 (1970)).

Here the murder charge alleged that Hoover "did knowingly kill another human being, to-wit: Michael R. Wilson." The felony-murder charge alleged that Hoover "did kill another human being, to-wit: Michael R. Wilson, while committing or attempting to commit robbery." The jury acquitted Hoover of murder. The jury's murder acquittal may have been based exclusively on a finding that Hoover lacked the required *mens rea* for murder. In other words, the jury may have concluded that Hoover caused Wilson's death, but that he did not knowingly do so. Retrial for felony murder would only require proof that Hoover killed Wilson during the commission of the robbery. We therefore cannot say that retrial for felony murder would require proof of a fact necessarily found in Hoover's favor by virtue of the murder acquittal. Accordingly, Hoover's murder acquittal does not bar retrial for felony murder. · *Cf. Buggs v. State,* 844 N.E.2d 195, 200 (Ind.Ct.App.2006) ("[F]elony murder requires a killing *during the commission of a specified felony* while murder requires a *knowing or intentional* killing.... Therefore, federal double jeopardy principles did not prohibit [the defendant's] retrial for murder.").

### B. Effect of the Robbery Conviction

Hoover also suggests that his robbery conviction bars retrial for felony murder. "[W]hen a felony-murder results from a killing in the commission of a robbery, the robbery is a lesser included offense of the felony-murder...." *Eddy v. State,* 496 N.E.2d 24, 29 (Ind.1986). Hoover was convicted of the predicate robbery, but the jury deadlocked on the greater offense of felony murder. The question is whether a defendant can be retried on a greater, hung charge after being convicted of the lesser-included.

A defendant who has been tried and convicted exclusively of a lesser-included offense cannot be tried in a separate prosecution for the greater offense

without violating double jeopardy principles. *See Brown v. Ohio,* 432 U.S. 161, 166–69, 97 S.Ct. 2221, 53 L.Ed.2d 187(1977). Moreover, where a defendant is tried alternatively for both a lesser-included and greater offense, and the jury convicts on the lesser-included offense while saying nothing with respect to the greater offense, double jeopardy bars retrial on the greater charge. *See Green v. United States,* 355 U.S. 184, 190–91, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Price v. Georgia,* 398 U.S. 323, 328–29, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). The defendant in that situation is said to be "impliedly" or "implicitly" acquitted of the greater offense and therefore may not face retrial. *See generally* Lafave et al., *supra,* § 25.4(d).

▮ The United States Supreme Court has not addressed the situation in which a jury convicts on the lesser-included offense and expressly deadlocks on the greater offense. However, the prevailing conclusion among lower courts is that federal double jeopardy principles do not bar retrial on the greater, mistried count. *See, e.g., United States v. Williams,* 449 F.3d 635, 645 (5th Cir.2006); *United States v. Bordeaux,* 121 F.3d 1187, 1192 (8th Cir. 1997); *see also Haddix v. State,* 827 N.E.2d 1160, 1165 (Ind.Ct.App.2005), *trans. denied;* 6 Lafave et al., *supra,* § 25.4(d). "The jury's express statement that it could not agree on a verdict as to the greater offense obviously precludes the inference that there was an implied acquittal." *Bordeaux,* 121 F.3d at 1192. We find no reason to part with the current weight of authority. We conclude that federal law does not prohibit Hoover's retrial for felony murder based on his conviction for the lesser-included robbery.

The remaining question is whether Indiana law compels a different result. We should first observe that our courts

have produced a split of authority on the issue. *Compare State v. Mercer,* 500 N.E.2d 1278, 1282–83 (Ind.Ct.App.1986) (where jury hung on greater offense of aggravated battery but convicted defendant of lesser-included criminal recklessness, double jeopardy precluded retrial for battery), *with Davenport v. State,* 734 N.E.2d 622, 625 (Ind.Ct.App.2000) ("[T]he jury's determination of guilt on the lesser-included possession charge but deadlock on the greater dealing charge did not preclude the State from retrying Davenport for the greater offense."), *trans. denied, and State v. Klinger,* 698 N.E.2d 1199, 1202 (Ind.Ct.App.1998) (conviction for lesser-included offense of pointing a firearm did not bar retrial for hung count of attempted murder), *trans. denied; see also Redman v. State,* 679 N.E.2d 927, 932 (Ind.Ct.App.1997) (where defendant was convicted of both greater and lesser-included offenses, but greater conviction was reversed on appeal, double jeopardy did not bar retrial on greater charge), *trans. denied, abrogated in part by Carter v. State,* 750 N.E.2d 778, 781 (Ind.2001).

▮ None of the foregoing cases, however, analyzed or even mentioned one of our own double jeopardy statutes, Indiana Code section 35–41–4–3. Section 35–41–4–3(a) provides that "[a] prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if … the former prosecution resulted in an acquittal or a conviction of the defendant (A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.)…." Section 35–41–4–3(a) codifies the doctrine of implied acquittal and the principles set forth in *Green* and *Price.* *Haddix,* 827 N.E.2d at 1165. "This statute provides that a conviction for a lesser-included offense absolutely bars

any subsequent prosecution for the greater charged offense, because such a conviction is deemed an acquittal of the greater offense." *Id.* at 1167. We note, however, that the statute is silent with respect to the hung-count situation presented here. By its plain language, the statute bars any retrial on a greater offense when the defendant has been convicted of the lesser-included, even where a first jury considered but deadlocked on the greater charge.

In *Haddix*, a jury found the defendant guilty of several lesser-included misdemeanor drunk-driving charges but was unable to reach a decision on the greater felony offenses. 827 N.E.2d at 1162. The trial court refused to enter judgment on the lesser-included guilty verdicts and declared a mistrial. *Id.* The court then ordered a retrial on the greater felony charges. *Id.* The defendant argued that the second trial violated double jeopardy. *Id.* The *Haddix* Court proceeded by analyzing *Green, Price,* and Section 35–41–4–3. *Id.* at 1162–65. The Court explained that Section 35–41–4–3 "provides that a conviction for a lesser-included offense absolutely bars any subsequent prosecution for the greater charged offense, because such a conviction is deemed an acquittal of the greater offense." *Id.* at 1167. In *Haddix,* however, the trial court did not enter judgment on the jury's lesser-included guilty verdicts. *Id.* at 1162. The *Haddix* panel observed that "a 'conviction' generally is not regarded as equivalent to a mere guilty verdict for an offense." *Id.* at 1165. The panel concluded that because the trial court declined to enter judgment on the lesser-included guilty verdicts after the first trial, Haddix's case did not fall within the "literal purview" of Section 35–41–4–3. *Id.* at 1167. The Court therefore held that retrial was not barred. *Id.* at 1168.

This case presents the single component missing from *Haddix.* Here the trial court entered judgment on the robbery conviction following the jury's guilty verdict. This case thus falls within the literal purview of Section 35–41–4–3. In accordance with Section 35–41–4–3 and *Haddix,* Hoover's conviction on the lesser-included robbery offense constitutes an acquittal on the greater felony-murder charge, notwithstanding the jury's express deadlock. The State is therefore barred from retrying Hoover for felony murder. *See also People v. Fields,* 13 Cal.4th 289, 52 Cal. Rptr.2d 282, 914 P.2d 832, 840–41 (1996) (interpreting California's analogous statute and reaching the same conclusion).

Hoover's robbery conviction is affirmed, but we remand to the trial court with instructions to dismiss the felony-murder count with prejudice.

Affirmed.

RILEY, J., and CRONE, J., concur.