**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 10 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GARY L. GRINER**
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SETH T. LIPSCOMB, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1109-CR-443 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Roland W. Chamblee, Jr., Judge
Cause No. 71D08-1005-FD-413

**May 10, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Seth T. Lipscomb (Lipscomb), appeals his conviction for resisting law enforcement, a Class A misdemeanor, Ind. Code § 35-44-3-3; and theft, a Class D felony, I.C. §35-43-4-2(a)

We affirm.

## ISSUES

Lispcomb raises three issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion when it admitted the testimonial evidence of the police officer after he requested Lipscomb's identification;

(2) Whether the trial court abused its discretion when it instructed the jury that a private citizen may not flee from a lawful or unlawful arrest; and

(3) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Lipscomb's convictions.

## FACTS AND PROCEDURAL HISTORY

In the late afternoon on May 14, 2010, Megan Weldy (Weldy) was working as a cashier at Martin's Supermarket in St. Joseph County, Indiana. She noticed a male, later identified as Lipscomb, dressed in a dark baseball hat, a hooded sweatshirt, and dark pants, exit the store while "holding one of his sides kind of funny" as if trying to conceal an item. (Transcript p. 9). She notified the store's manager, Thomas Slott (Slott). Slott reviewed the store's security surveillance videos which showed Lipscomb and a friend hiding two bottles of liquor. The video reflected that Lipscomb exited the store without

2

paying for the items. Slott ran an inventory check in the liquor aisle and confirmed that two bottles were missing.

At 6 p.m. that day, Slott informed St. Joseph County Sheriff's Department officer Richard Croymans (Officer Croymans), who worked security part-time for Martin's Supermarket, of the incident. Officer Croymans reviewed the surveillance video and completed a police report. A few hours later, while Officer Croymans was watching live surveillance footage of the store, he noticed Lipscomb, wearing the same outfit and accompanied by the same friend, enter the Supermarket again. Officer Croymans informed Slott and they both followed Lipscomb outside.

Outside the store, Officer Croymans identified himself as a police officer, using his police identification and badge. He informed Lipscomb that he was an officer with the sheriff's department and asked for Lipscomb's identification. Lipscomb responded that he did not do anything wrong and refused to show his identification. Officer Croymans told him: "I'm not accusing you of anything but I do have you on tape from an earlier theft, and I need to gather your identification so I can complete a police report." (Tr. p. 32). Lipscomb became defiant, stating "I haven't done anything, I ain't done shit, you have no right to see my ID." (Tr. p. 32). Lipscomb then lifted his shirt and turned away. As he started walking across the parking lot, Officer Croymans yelled "stop, police[.]" (Tr. p. 32). Lipscomb did not stop. In an attempt to prevent Lipscomb from leaving, Officer Croymans placed his arm on him, but as Lipscomb spun away, he struck Officer Croymans in the jaw with a closed fist. Officer Croymans contacted dispatch and requested assistance. As Lipscomb ran away, a chase ensued. Another officer pulled his

vehicle in front of Lipscomb, stopping him. Because Lipscomb did not comply with orders to place his hands behind his back, he was tasered.

On May 15, 2010, the State filed an Information charging Lipscomb with Count I, battery on a law enforcement officer, a Class D felony, I.C. §35-42-2-1(a) and Count II, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44-3-3. On August 19, 2010, the State amended the Information by adding Count III, theft, a Class D felony, I.C. § 35-43-4-2(a). That same day, Lipscomb filed a motion to suppress evidence that was obtained after Officer Croymans stopped Lipscomb. On October 12, 2010, after a hearing, the trial court denied the motion. On January 27, 2011, a jury trial was held. At the close of the evidence, the jury found Lipscomb guilty of resisting law enforcement and theft but not guilty of battery on a law enforcement officer. On August 25, 2011, the trial court sentenced Lipscomb to one year executed on resisting law enforcement and one and one-half years executed on theft, both sentences to be served concurrently.

Lipscomb now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Admission of Evidence*

Lipscomb contends that the trial court erred by denying his motion to suppress because under the totality of the circumstances Officer Croymans' stop of Lipscomb was unreasonable and violated Article I, § 11 of the Indiana Constitution[1]. However, because Lipscomb did not seek an interlocutory appeal after the trial court's denial of his motion to suppress but rather proceeded to trial, the issue is more properly phrased as whether

---

[1] Lipscomb does not make an argument under the Fourth Amendment of the United States Constitution.

4

the trial court abused its discretion by admitting Officer Croymans' testimonial evidence at trial. *See Washington v. State*, 784 N.E.2d 584, 586 (Ind. Ct. App. 2003).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Stringer v. State*, 853 N.E.2d 543, 546 (Ind. Ct. App. 2006). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. However, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected. *Id*.

The purpose of Article I, § 11 of the Indiana Constitution is to "protect from unreasonable police activity, those areas of life that Hoosiers regard as private." *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). Our state provision tracks the language of the Fourth Amendment to the United States Constitution *verbatim*. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). However, the legality of a governmental intrusion under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Id*. Although there may be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balancing of the following: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id*. at 361. The burden is on the State to show that under the totality of the

5

circumstances, the police intrusion was reasonable. *Trotter v. State*, 933 N.E.2d 572, 580 (Ind. Ct. App. 2010).

We find that Officer Croymans' actions were reasonable under the totality of the circumstances test. The degree of suspicion was high because Officer Croymans had recognized Lipscomb as the individual who had taken two bottles of liquor from the store without paying for it earlier in the day. The degree of intrusion was minimal. Officer Croymans followed Lispcomb outside, identified himself as a police officer, and requested to see Lipscomb's identification as part of an ongoing investigation in the theft. The degree of intrusion only increased after Lipscomb escalated the encounter by refusing to show his ID and by walking away. Finally, the extent of law enforcement needs was high as Officer Croymans was investigating a theft, had the suspect in front of him, and needed the suspect's name before he fled in order to officially charge him. In sum, we conclude that the trial court did not abuse its discretion when it admitted Officer Croymans' testimony recounting the events after he stopped Lipscomb.

## II. *Jury Instruction*

Next, Lipscomb argues that the trial court abused its discretion by instructing the jury that a private citizen may not flee from a lawful or unlawful arrest. He maintains that this instruction was a misstatement of the law and improperly focused the jury's attention on one particular aspect of the evidence.

It is well established that instructing the jury is within the discretion of the trial court. *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied*. Jury instructions are to be considered as a whole and in reference to each other; error in a

particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.* The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Hoover v. State*, 918 N.E.2d 724, 731 (Ind. Ct. App. 2009), *trans. denied.* When a trial court gives or refuses a tendered instruction, we consider whether the instruction: (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Id.* at 732. We will review the instruction *de novo* if the challenge is that it incorrectly states the law. *Id.* However, if the challenge is that the instruction is not supported by the evidence in the record or that the substance is not covered by other instructions, we will reverse only if the trial court has abused its discretion. *Id.*

> Here, the trial court instructed the jury that
>
> [a] private citizen may not flee in resisting a peaceful arrest by an individual who he knows or has reason to know is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful.

(Appellant's App. p. 31). In *Cole v. State*, 878 N.E.2d 882, 886 (Ind. Ct. App. 2007), we noted that "it is well settled that in Indiana, an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order." Expounding on the rule's rationale, we stated that "[b]ecause of the danger flight poses and the fact that a defendant has judicial remedies if he does not flee, the rule in our State is that even if a police officer does not have reasonable suspicion to stop a defendant, the defendant has no right to flee when the

7

officer orders him to stop." *Id*. In light of *Cole*, the tendered jury instruction was a correct statement of the law.

Furthermore, we disagree with Lipscomb who maintains that the instruction unduly emphasizes a particular piece of evidence and thus encroached on the duties of the jury and eased State's burden of proving each element of the offense. In particular, Lipscomb claims that the instruction relieved the State from proving that he knowingly fled from a law enforcement officer and implied that he was under arrest, even though that contradicted Officer Croymans' testimony.

Our review of the tendered jury instructions reveals that the trial court fully instructed the jury on the charges, as well as on the separate elements for each offense which the State was required to prove beyond a reasonable doubt. Only after giving these instructions, did the trial court proceed with tendering the disputed instruction. Reading the instructions as a whole, we conclude that the jury was apprised of the law applicable to the facts and was not misled. Therefore, we find that the trial court did not abuse its discretion by tendering the jury instruction.

### III. *Sufficiency of the Evidence*

Lastly, Lipscomb contends that the State failed to present sufficient evidence beyond a reasonable doubt to convict him of resisting law enforcement and theft. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212-23 (Ind. Ct. App. 2007), *trans. denied*. We will consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom and will affirm if the

8

evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id*. at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

A. *Resisting Law Enforcement*

In order to convict Lipscomb of resisting law enforcement, the State was required to establish beyond a reasonable doubt that Lipscomb knowingly or intentionally fled from a law enforcement officer after the officer identified himself by visible or audible means and ordered the person to stop. *See* I.C. § 35-44-3-3. Focusing on the nature of Officer Croymans' actions, Lipscomb asserts that Officer Croymans was not lawfully engaged in the execution of his official duties as a law enforcement officer at the moment Lipscomb resisted his arrest.

In a factually analogous case, *Tapp v. State*, 406 N.E.2d 296, 297 (Ind. Ct. App. 1980), *reh'g denied*, we addressed, as an issue of first impression, whether an off-duty police officer, who was working as a plainclothes security guard at a store, was acting in his official duty when he arrested a suspected shoplifter. In *Tapp*, the officer observed the defendant shoplift an item, followed the defendant outside the store where he identified himself as a police officer and tried to arrest the defendant. *Id*. Tapp resisted arrest. *Id*. We held that the police officer was acting within his official duties despite being off-duty and being employed as a security guard for a private entity. *Id*. at 302. After analyzing the statutory language and out-of-state case-law, we reasoned that

> [i]t is the nature of the acts performed and not whether the officer is on or off duty, in or out of uniform, which determines whether the officer is engaged in the performance of his official duties. We hold therefore, that

9

> the [S]tate proved that [the officer] was a law enforcement officer engaged in the performance of his official duty . . . when it proved that he was an Evansville police officer, displayed his police badge and announced his status to [] Tapp, and informed him that she was under arrest pursuant to the law of this state even though he was off duty, out of uniform, and employed as a security guard by a private employer.

*Id.*

Likewise here, we reach a similar result. During trial, Officer Croymans testified that, while he was off-duty and working as a part-time private security guard, he was investigating a theft. When he approached Lipscomb outside the store, Officer Croymans "identified [himself] as a police officer using [his] police identification and badge, told [Lipscomb] that [he] was a police officer with the sheriff's department and wanted to see his identification." (Tr. pp. 31-32). After Lipscomb became defiant and started to walk away, Officer Croymans yelled "stop, police[.]" (Tr. p. 32). Based on these circumstances, we conclude that the State proved beyond a reasonable doubt that Officer Croymans was a law enforcement officer engaged in the performance of his official duties for the purpose of I.C. § 35-44-3-3.

### B. *Theft*

To convict Lipscomb of theft, the State was required to establish beyond a reasonable doubt that Lipscomb did knowingly or intentionally exert unauthorized control over two bottles of alcohol of Martin's Supermarket, with intent to deprive the store of any part of its value or use. *See* I.C. § 35-43-4-2. Lipscomb now argues that "[n]o person positively identified Lipscomb as the person depicted on the surveillance video." (Appellant's Br. p. 10).

10

The record indicates that when he reported for work at Martin's Supermarket, Officer Croymans was notified of a theft and reviewed the surveillance video which had captured a male stealing two bottles of alcohol. This individual was dressed in a dark baseball hat, a hooded sweatshirt, and dark pants and was accompanied by a friend. A few hours later, while Officer Croymans was watching live surveillance footage of the store, he noticed Lipscomb, while wearing the same outfit as the individual who had previously stolen the alcohol and accompanied by the same friend, enter the Supermarket again. When he confronted Lipscomb, Lipscomb lifted his shirt as to indicate that he had nothing to hide. Based on this evidence, we conclude that the jury could reasonably infer that Lipscomb was the individual who had committed the theft. We affirm his conviction.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court properly admitted the evidence obtained by Officer Croymans after he requested Lipscomb for identification; (2) the trial court properly instructed the jury that a private citizen may not flee from a lawful or unlawful arrest; and (3) the State presented sufficient evidence beyond a reasonable doubt to sustain Lipscomb's convictions.

Affirmed.

NAJAM, J. and DARDEN, J. concur