**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL W. BEATTY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A05-1107-CR-339 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Fred H. Hoying, Senior Judge
Cause No. 39C01-1103-FA-180

**May 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Daniel W. Beatty (Beatty), appeals his conviction for Count I, dealing in methamphetamine, a Class A felony, Ind. Code § 35-48-4-1.1(a)(1)(A); Count II, conspiracy to deal methamphetamine, a Class A felony, I.C. §§ 35-41-5-2; 35-48-4-1.1(a)(1)(A); Count III, possession of methamphetamine, a Class B felony, I.C. § 35-48-4-6.1(b)(2)(B); Count IV, possession of precursors, a Class D felony, I.C. § 35-48-4-14.5(e); and his adjudication as a habitual substance offender, I.C. § 35-50-2-10.

We affirm.

## ISSUE

Beatty raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Beatty's conviction.

On cross-appeal, the State raises one issue, which we restate as: Whether the trial court abused its discretion when it refused to give the State's tendered instruction on accomplice liability.

## FACTS AND PROCEDURAL HISTORY

In April of 2010, Beatty and Cecelia Turner (Turner), who were old friends, reconnected and began a romantic relationship. Beatty taught Turner how to manufacture methamphetamine and they began to make and use methamphetamine together. Between April of 2010 and February of 2011, Beatty purchased boxes of methamphetamine pills twenty-seven times and attempted to purchase additional pills ten other times; Turner

purchased boxes of pills twenty times and attempted additional purchases on eleven other times.

On February 27, 2011, Turner checked into room 11 of the Englewood Motel in Madison, Indiana. Between February 27, 2011 and March 4, 2011, Beatty stayed with Turner a couple of nights and visited her every day. During this period, Beatty and Turner cooked methamphetamine approximately ten times in the motel room. On March 3, 2011, Turner's ex-boyfriend purchased pseudoephedrine pills which he gave to Turner in exchange for some methamphetamine. After Beatty and Turner cooked methamphetamine in the motel room, they went to Turner's brother's house where they got high. Later, they decided to go to a local tavern.

Early morning on April 4, 2011, Madison Police Officer Jonathan Simpson (Officer Simpson) noticed Turner's vehicle in the tavern's parking lot. Officer Simpson had noticed the same vehicle at the Englewood Motel earlier in the week. The vehicle had caught the Officer's attention because it had Jennings County license plates. Officer Simpson regularly reviews the database that records all pseudoephedrine purchases and he had noticed a significant number of people from Jennings County driving to Madison in Jefferson County to make their purchases. After checking the vehicle registration, Officer Simpson ran Turner's name through the database and discovered her numerous purchases.

Around 2 a.m., Beatty and Turner left the tavern. Turner drove the car and Beatty was in the passenger's seat. Officer Simpson followed them and initiated a traffic stop for driving without headlights. While Officer Simpson was preparing a warning citation,

K-9 Officer Ricky Harris ran his K-9, Max, around the vehicle. Max alerted by the driver's side door. When patting down Turner, Officer Simpson found a baggy containing .17 grams of methamphetamine in her pants' pocket. Next, the Officers searched Turner's vehicle. Turner's purse was in the center console between the two front seats. Inside the purse, the Officers found a bag of twenty pseudoephedrine pills. Beatty told the Officers that "those [pills] are for my allergies." (Transcript p. 182). Besides the pills, the Officers also found a lithium battery and a black nylon bag containing multiple syringes. Elsewhere in the car, the Officers discovered a metal tin containing a coffee filter with .04 grams of white methamphetamine powder residue, bottles of drain cleaner, cans of starter fluid, cold packs, and hand warmers. All of these items are regularly used in the manufacture of methamphetamine. When the Officers handcuffed Beatty, he muttered "[i]t's all mine." (Tr. p. 103).

The Officers also obtained a search warrant for the motel room. Sitting on a table by the television was a glass jar, containing a white powder residue that tested positive for methamphetamine. Inside a box, next to the refrigerator, were a two-liter bottle and a little bottle containing separated liquids, which both tested positive for methamphetamine. The Officers also located a coffee filter stuck in the heating vent, which contained .02 grams of methamphetamine powder. Containers of salt and sandwich baggies were scattered in the room; empty pseudoephedrine packages were found in the trash. The Officers also found numerous items of men's clothing in the room.

4

On March 7, 2011, the State filed an Information charging Beatty with Count I, dealing in methamphetamine, a Class A felony; Count II, conspiracy to deal methamphetamine, a Class A felony; Count III, possession of methamphetamine, a Class B felony; Count IV, possession of precursors, a Class D felony; and a habitual substance offender Count. On May 16-18, 2011, a bifurcated jury trial was held. At the close of the evidence, the jury found Beatty guilty as charged on the four felony Counts. Beatty subsequently pled guilty to being a habitual substance offender in exchange for the State's agreement that he would receive the minimum three-year enhancement for that adjudication. On June 10, 2011, the trial court sentenced Beatty to thirty years on the dealing methamphetamine conviction, enhanced by three years for the habitual offender adjudication, and to concurrent sentences of thirty years on the conspiracy conviction, ten years on the possession of methamphetamine conviction, and eighteen months on the possession of precursors conviction. Beatty's total sentence amounted to thirty-three years.

Beatty now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. APPEAL

Beatty argues that the State failed to present sufficient evidence beyond a reasonable doubt that he constructively possessed the contraband. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212-23 (Ind. Ct. App. 2007), *trans. denied*. We will consider only the evidence most favorable to the verdict and the

5

reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

Beatty's argument solely focuses on his constructive possession of the methamphetamine and its precursors. Specifically, he asserts that each of the Counts charged required proof of possession of the contraband. However, we find that Beatty's challenge on constructive possession grounds is irrelevant to his conviction for dealing in methamphetamine and his conviction for conspiracy to deal as these charges are sustained on evidence that Beatty knowingly or intentionally manufactured the methamphetamine. *See* I.C. § 35-48-4-1. The doctrine of constructive possession only comes into play with respect to Beatty's conviction for possession of methamphetamine and possession for precursors.

To convict Beatty of possession of methamphetamines, a Class B felony, the State was required to establish that Beatty, without a valid prescription, knowingly or intentionally possessed less than three grams of pure or adulterated methamphetamine in, on, or within one thousand feet of a family housing complex. *See* I.C. § 35-48-4-6.1(b)(2)(B). To convict Beatty of possession of precursors, a Class D felony, the State was required to prove beyond a reasonable doubt that he possessed two or more chemical reagents or precursors with the intent to manufacture a controlled substance. *See* 35-48-4-14.5(e).

6

The record lacks any evidence that Beatty actually possessed the contraband, as no methamphetamine or precursors were found on him. In the absence of actual possession of contraband, constructive possession may support a conviction for a drug offense. *Allen v. State*, 798 N.E.2d 490, 501 (Ind. Ct. App. 2003). Constructive possession will support a possession conviction if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband. *Id.* Control in this sense concerns the defendant's relation to the place where the substance was found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found. *Id.* Proof of a possessory interest in the premises does not require his actual ownership of the premises. *Id.* A house or apartment used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee. *Id.* To prove the capability element, the State must establish that the defendant had the ability to reduce the contraband to his personal possession or otherwise direct its disposition or use. *Causey v. State*, 808 N.E.2d 139, 144 (Ind. Ct. App. 2004).

Our review of the evidence leads us to the conclusion that the State presented sufficient evidence that Beatty had the intent and capability to maintain control over the methamphetamine found in the motel room and over the precursors found in the car. With respect to the methamphetamine found in the motel room, Turner testified that she and Beatty were involved in a joint methamphetamine manufacturing venture; in fact, Beatty had taught Turner the manufacturing process. When the Officers first entered the

7

motel room, many of the items were in plain view. Sitting on a table by the television was a glass jar, containing white powder residue that tested positive for methamphetamine. Containers of salt and sandwich baggies were seen in the room; empty pseudoephedrine packages were found in the trash. Moreover, inside a box, next to the refrigerator, were a two-liter bottle and a little bottle containing separated liquids, which both tested positive for methamphetamine. The Officers also found numerous items of men's clothing scattered in the room, in close proximity to the contraband. Testimony from the motel's manager and the motel's housemaid revealed that Beatty stayed with Turner a couple of nights and was with her in the room every day. Both individuals noticed Beatty coming and going several times a day.

Turning to the possession of the precursors found in the car, we note that Beatty initially told the Officers that the bag of twenty pseudoephedrine pills, found in Turner's purse, were "for [his] allergies." (Tr. p. 182). Later, after the Officers located, among others, a lithium battery, a black nylon bag containing multiple syringes, and a coffee filter with .04 grams of white methamphetamine powder residue, Beatty admitted that "[i]t's all mine." (Tr. p. 103).

Beatty now relies on *Grim v. State*, 797 N.E.2d 825 (Ind. Ct. App. 2003) to support his argument that he did not constructively possess the contraband. In *Grim*, the passenger in a car was charged with possession of methamphetamine that was discovered in a waistband carrying case underneath the passenger's seat. *Id*. at 832. We reversed his conviction on the basis that "[w]hile Grim was in close proximity to the case containing the methamphetamine, such evidence alone does not prove Grim knew of the presence of

8

the methamphetamine, and thus, he cannot be said to have been in constructive possession thereof." *Id*. at 832. In the case before us, however, the evidence indicates that not only was Beatty in close proximity to contraband items in plain view, he was an active participant in its manufacture, and made incriminating statements asserting ownership over the contraband found in Turner's vehicle. We conclude that the State presented sufficient evidence that Beatty constructively possessed the methamphetamine found in the motel room and the precursors found in the car.

## II. CROSS-APPEAL

In its cross-appeal, the State contends that the trial court abused its discretion when it refused to give the State's tendered instruction on accomplice liability on the ground that the State had not charged Beatty as an accomplice but only as a principal.

It is well established that instructing the jury is within the discretion of the trial court. *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied*. Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.* The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Hoover v. State*, 918 N.E.2d 724, 731 (Ind. Ct. App. 2009), *trans. denied*. When a trial court gives or refuses a tendered instruction, we consider whether the instruction: (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Id*. at 732. We will review the instruction *de novo* if the challenge is that it

9

incorrectly states the law. *Id*. However, if the challenge is that the instruction is not supported by the evidence in the record or that the substance is not covered by other instructions, we will reverse only if the trial court has abused its discretion. *Id.*

In Indiana, there is no distinction between the criminal responsibility of a principal and that of an accomplice. *McQueen v. State*, 711 N.E.2d 503, 506 (Ind. 1999). A defendant may be convicted on evidence of aiding or inducing even though the State charged the defendant as a principal. *Suggs v. State*, 883 N.E.2d 1188, 1192 (Ind. Ct. App. 2008). "Accordingly, this [c]ourt has repeatedly held that where one is charged as a principal it is not error to instruct on the crime of aiding in the commission of the crime where there is evidence to support such an instruction." *McQueen*, 711 N.E.2d at 506; *Cowan v. State*, 783 N.E.2d 1270, 1276 (Ind. Ct. App. 2003).

The evidence in this case warranted the tender of an instruction on accomplice liability. As such, the State was not precluded from having the jury instruction given and therefore, the trial court abused its discretion by refusing to grant the State's request. Nevertheless, we do not reverse for this error because even though this instruction was omitted from the jury's consideration, it is clear that the jury was not misled as to the law in the case and, based on the sufficient evidence available, was able to convict Beatty as a principal

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to sustain Beatty's conviction. On the State's cross-appeal,

we conclude that the trial court abused its discretion when it refused to tender an instruction on accomplice liability.

Affirmed.

NAJAM, J. and DARDEN, J. concur